HAMLIN, Receiver, vs. JONES and wife.

By the common law, when real estate of the wife is sold, and by husband and wife conveyed, the moneys arising from such sale are the property of the husband.

APPEAL from the Circuit Court for *Winnebago* County.

One Lloyd obtained a judgment against *John Jones* in December, 1864, for $289.47, and execution having been returned "no property," supplementary proceedings were had, in which *C. R. Hamlin* was appointed receiver; and he brought this action to set aside, as fraudulent against creditors, a conveyance of 320 acres of land which *Jones* had made to his son on the 4th of May, 1860; which land the son, on the same day, conveyed to his mother, *Mary Jones*. It was admitted on the trial that *John Jones* entered the land in question in February, 1848, and received the patent for it. As to the money with which the land was entered, *Jones* testified: "I was married to *Mary*, my wife, in Wales, about 34 years ago; emigrated to America in 1847; did not bring any property or money of my own;

purchased the land immediately after I got here. The money used in buying the land was not my money; it was my wife's money. My wife's mother died, left some land, and the land was sold, and the money was got for the land. I did not convey the land to my son on account of debts; don't believe I owed any one at the time. My only object in deeding the land to my son was that he might deed it to my wife. My wife told me she must have her property." *Mrs. Jones* testified: " My mother willed land in Wales to me; I sold it for about 500 sovereigns; bought the half section where we live, with the money. My husband got the deed for it. I let him have the money and he took the title in his own name. I brought the money from Wales in my own trunk; he did not have it until he bought the land. I had no object in getting the land back except to have it go to my children in case of my death. The land was worth about $600.00." As to the origin of the debt for which the judgment in favor of Lloyd against *Jones* was rendered, the proof was that in September, 1858, Lloyd, *Jones*, Evans and another became owners of a vessel called the "Swallow;" that in March, 1860, two judgments were rendered against Lloyd, *Jones*, Evans, and the vessel jointly, one for $107.82 and the other for $148.80, being the wages of employees on the vessel, both of which were paid by Lloyd in November, 1860; that Lloyd advanced, in 1858, for the use of the vessel, $10, paid about 1st January, 1860, a note for $35.70, given by himself and *Jones* for same account, and prior to March, 1863, had paid several other notes of the same kind, given in 1859. The circuit judge found that the liability of *Jones*, upon which the judgment in favor of Lloyd was rendered, accrued before " the 1st day of April, 1860;" and that the conveyance from *Jones* to his son, and that from the son to *Mary Jones*, were void as to creditors. The judgment was, *inter alia*, that *Mary Jones* should, by a specified day, execute a release to the receiver of all her right and interest in said real estate, except such part of the same as was exempt, by

law, from sale on execution; and on failure to do so, that all her right and interest in said land should, by virtue of the judgment, be vested in such receiver; and that the receiver should sell the same at public vendue, &c. The *defendants* appealed.

*H. B. Jackson*, for appellants:

The business affairs of the "Swallow" and its owners were unsettled until December 30, 1864; more than four years after the conveyance. The indebtedness of the boat at the time of the conveyance was inconsiderable, and the vessel itself was abundant security for all debts which existed at that time, and more. These demands, whatever they were, remained unpaid by either of the joint owners until after the conveyance. Can it be said that the unsettled business affairs of the vessel made Lloyd the creditor of *Jones*? And that, too, before Lloyd had paid the joint debt, and thus rendered *Jones* liable for contribution? On this point counsel cited *Sexton v. Wheaton*, 1 Am. Lead. Cas., 62; *Seward v. Jackson*, 8 Cow., 436–7; 9 Cow., 128; 1 Johns. Cas., 74; 9 Wend., 312; 9 Johns., 127; 15 id., 466; 20 id., 153; 4 Cow., 607; 2 Wend., 248; 2 Caines' Cas., 310. 2. The defendants testify that they had no fraudulent intent in making or receiving the conveyance. This evidence was introduced by the plaintiff, and he is estopped from questioning its veracity. 7 Cow., 238; Starkie's Ev., 247, and cases cited. 3. The money used in the purchase of the land was kept by *Mrs. Jones* until the land was bought, and the receipt of it by *Mr. Jones* for the special purpose was not such a reduction of it to his possession as would divert her interest in it. *Barron v. Barron*, 24 Vt., 375. 4. A post-nuptial settlement by husband on wife will be sustained when the consideration is property received from her. 16 Ala., 489; 2 Roper on H. & W., 227; Reeve's Dom. Rel., 166; 10 Ves., 146; 7 Johns. Ch., 57; 8 Am. Law. Reg., 754; Brougham on Cov., 283. 5. The judgment is erroneous because it subjects the homestead to forced sale.

*Whittemore & Weisbrod*, for respondent.

DOWNER, J, By the principles of the common law, when the real estate of the wife is sold and by husband and wife conveyed, the moneys arising from such sale are the property of the husband and subject to his debts.   The title, therefore, to the land ordered to be conveyed to the receiver was rightly taken by the husband, *John Jones*, in his own name when he purchased it of the United States, and it was his own.   The conveyances from the husband and wife to their son, and from the son to his mother, were fraudulent and void as to Lloyd, the plaintiff in the judgment; and the circuit court rightly found that they were made with *intent* to hinder and delay and defraud the creditors of *Jones*.   These conveyances were made *after* the suit of Lloyd against *Jones* was commenced, and before the judgment therein against him was rendered.   There were also several other judgments against him rendered but a short time before, on account of the indebtedness of the schooner Swallow.   We must believe that men intend what is the inevitable result of their own acts.   We believe their acts and not their words, when these contradict their acts.   And it is clear from all the evidence, to our minds, that *John Jones* intended to put himself in a position where he could resist the collection of any judgment Lloyd might recover against him, his testimony to the contrary notwithstanding.   Nor does the record show, as maintained by the appellants' counsel, that *Jones's* interest in the Swallow was sufficient to pay any judgment Lloyd might recover against him.   On the contrary, the reasonable inference from his own examination on supplementary proceedings is, that he had no personal property sufficient to satisfy the execution, or if he had, he was attempting to conceal it, and make out that it belonged to other parties.

The objection that the judgment declares void the conveyance of the homestead as well as the rest of the land, is untenable.   For it is obvious that the judgment directs to be con-

veyed to the receiver, and authorizes him to sell, only such portion of the land as *could be sold on execution* against *John Jones* if the title was in him.

*By the Court.*—The judgment of the circuit court is affirmed.