KESNER v. TRIGG.

1. In Virginia, a party cannot avail himself of the defence of usury, without averring and proving it, and he is required to pay the principal of his debt.

2. Where a party at the time of contracting a debt, executed to secure the payment thereof, a deed of trust of lands to which he had a perfect record title, and a third party subsequently makes claim that he had, at the date of the deed, a title to them, — *Held,* that the trustee and *cestui que trust* must be considered as purchasers; and if they had no notice of such claim, the lands are subject to sale to satisfy the debt. If the sale yields a surplus, the rights of such third party thereto will be the same as they were to the land.

3. A post-nuptial contract, made upon sufficient consideration, and wholly or partially executed, will be sustained in equity.

4. By the common law, if the husband and wife sell and convey her lands, the money which he receives therefor, without any reservation of rights on her part, will belong to him.

APPEAL from the Circuit Court of the United States for the Western District of Virginia.

Philip Kesner, of Washington County, Virginia, an adjudicated bankrupt, surrendered real estate, viz.: —

"One-half interest in $150\frac{8}{100}$ acres of land lying in Washington County, Virginia, near Cedarville, with improvements thereon.

"Life-estate in the other one-half of the above tract, $800.

"The other half of this tract belongs to the petitioner's wife."

Afterwards, on the 6th of August, 1873, by leave of the court he filed an amended schedule, varying the description of his land, viz.: —

"All the petitioner's interest in a tract of $150\frac{8}{100}$ acres of land lying in Washington County, Virginia, near Cedarville, conveyed to petitioner by George Dutton, in consideration chiefly of his wife's lands, near Lyon's Gap, in Smyth County.

"If his wife's claim to one-half is sustained, then he surrenders his petitioner's life-interest in that half.

"Petitioner's wife claims one-half of this land: value of the whole tract . . . . . . . . . . . . . . . . . $2,400

"If his wife sustains her claim of one-half, will be . . 1,200

"Value of life-interest . . . . . . . . . . . . . . 800 "

Kesner's assignee advertised the land; but Jane B. Kesner, his wife, filed her bill, and a temporary injunction was awarded forbidding the sale.

She claims that the whole land is her own property, and that there was a contract between her and her husband, not reduced to writing, by which she was to claim no interest in his property, and he none in hers; that an arrangement between one Thomas T. Hull, one George Dutton, and her husband, by which Dutton was to get Hull's land, Hull hers, and her husband Dutton's, was made, to which she assented, with the distinct understanding between her husband and herself, and in the belief, that she would have in the Cedarville land (the land surrendered by Philip Kesner) the same rights she had in her own land; that she was one of the three children of John Davis, who died intestate, leaving real estate at Lyon's Gap, which was divided, and one-third of it assigned to Kesner and wife, one-third to Moffett and wife, and one-third to Porterfield and wife; that Moffett and wife sold their third to Kesner and wife, who conveyed the two-thirds thus acquired to Hull's executor, by their deed, duly executed and acknowledged, May 26, 1852, and recorded 24th August, 1853; that the deed to the Cedarville land was made by Dutton and wife to Philip Kesner alone, on the 25th of January, 1851, and recorded Aug. 6, 1853; that the purchase-money paid to Moffett and wife was derived from the sale of certain slaves which the complainant received as part of her father's estate.

The bill further alleges that Philip Kesner executed a deed of trust, conveying the Cedarville farm, Jan. 29, 1862, to one Bekem, to secure the payment of a promissory note, of even date therewith, for $2,000, borrowed money, payable two years thereafter to one Greenway; that the money borrowed consisted of Virginia and North Carolina notes, which were

greatly depreciated; that said debt is not a lien on the land, and that if it be set up as such, it should only be at its " scaled value."

The deed of said Kesner and wife to Hull's executor was acknowledged by her before two justices of the peace of the county, who state in their certificate that she was by them examined privily and apart from her husband, and that the deed having been fully explained to her, she acknowledged the same to be her act, and declared that she had voluntarily executed the same, and did not wish to retract it.

The remaining facts are stated in the opinion of the court.

The bill makes Trigg, the assignee in bankruptcy, Greenway, and other persons parties. The grounds therein set up for relief are denied by the answers. Upon final hearing, the bill was dismissed, and the complainant appealed to this court.

Submitted on printed arguments by *Mr. James H. Gilmore* for the appellant, and by *Mr. John W. Johnston* for the appellees.

MR. JUSTICE SWAYNE delivered the opinion of the court.

The bill, so far as it relates to the debt claimed to be owing to the estate of John C. Greenway, deceased, secured by the deed of trust to Bekem, cannot be sustained, for several reasons. It is silent as to the objection of usury. In Virginia, a party cannot avail himself of this defence, without averring and proving it; and in such case he is required by statute to pay the principal of the debt. *Brown* v. *Toell's Adm'r*, 5 Rand. (Va.) 543; *Harnsbarger* v. *Kinney*, 6 Gratt. (Va.) 287.

It is asserted that the consideration of the note was a loan of Virginia and North Carolina bank-notes; that at the time of the transaction they were largely depreciated; that the value of the consideration should be fixed by scaling this currency; and that the amount to be paid on the note should be reduced accordingly. But, upon looking into the record, we find no evidence whatever upon the subject. The depreciation may have been more or less, or there may have been none. We cannot, as is suggested, take judicial notice of the facts, whatever they may have been. We must take the record as it is, and we cannot look beyond it.

No notice of any infirmity in the title of Kesner to the premises is brought home, either to the trustee or to the *cestui que trust*, and it is denied by the latter. Like a mortgagee, they are regarded as purchasers; and, in this case, they must be considered as such, *bona fide*, and without notice of the adverse rights of the appellant, if any she have. *Wickham & Goshorn* v. *Lewis, Morton, & Co.*, 13 Gratt. (Va.) 427; *Evans, Trustee*, v. *Greenhouse et al.*, 15 id. 156. This part of the case may, therefore, be laid out of view. The premises in question are clearly liable for the amount secured by the deed of trust. The position of the judgment creditors is different. They were not purchasers, and they can take by virtue of the liens of their judgments only what Kesner was entitled to. 15 Gratt. *supra*.

It remains to consider the claim of the appellant touching the premises in controversy. It is clear that she inherited from her father one-third of Lyon's Gap farm, and received, as a distributee of the estate of her father and mother, several slaves; that she and Kesner bought another third of the farm from her sister, Mrs. Moffett, and took from Asbury, the attorney of her sister and her sister's husband, a bond for the execution of a deed. The purchase-money was procured by the sale of slaves which came to Kesner by the appellant. On the 26th of May, 1852, the appellant and her husband, Kesner, conveyed the two-thirds of the Lyon's Gap farm to Sheffy, as executor of Hull. On the 25th of January, 1851, Dutton and wife conveyed to Kesner alone the Cedarville farm, which is the property in controversy. The transaction was an exchange of lands. $600 was paid to Dutton, as the difference in value of the two tracts. Kesner raised the money in the same way as that before mentioned. The appellant is neither named nor referred to in the deed to her husband. On the 29th of January, 1862, Kesner alone executed the trust-deed to Bekem. It embraced the entire Cedarville property. The tract contained about a hundred and fifty acres. In his first inventory in bankruptcy Kesner gave in half of this farm, and his life-interest in the other half, which was stated to belong to his wife. In an amended schedule subsequently filed, he gave in all his interest in the entire tract, which, he alleged, was conveyed to him

chiefly in consideration of the deed to Sheffy of his wife's lands near Lyon's Gap. He stated that she claimed one-half of the tract, and that if her claim were sustained, then he surrendered his life-interest in that half.

The whole tract must be sold to satisfy the debt secured by the deed of trust. If there should be any surplus, the appellant's rights will be the same with respect to that fund that they were as to the land. *Jones* v. *Lackland*, 2 Gratt. (Va.) 81 ; *Graham* v. *Dickens*, 3 Barb. (N. Y.) Ch. 1; *Olcott* v. *Bynum et al.*, 17 Wall. 44.

If there were no valid contract between the appellant and her husband, as claimed, the slaves — by the law of Virginia being chattels — were the absolute property of the latter, and at his death would have been assets in the hands of his personal representative. So by the common law, if the husband and wife sell and convey her land, and he receives the consideration money without any reservation of rights on her part, the money belongs to him. *Hamlin, Receiver*, v. *Jones and Wife*, 20 Wis. 536 ; Schouler, Domestic Relations, 120. No question is raised as to the Statute of Frauds, and we need not, therefore, consider that subject. It is now well settled that a post-nuptial contract made upon sufficient consideration, and wholly or partly executed, will be sustained in equity. *Gosden and Wife* v. *Tucker's Heirs*, 6 Munf. (Va.) 1; *Livingston* v. *Livingston*, 2 Johns. (N. Y.) Ch. 537 ; *Bullard* v. *Briggs*, 7 Pick. (Mass.) 533; 2 Kent, Com. 139; Cord, Married Women, sects. 36, 37. The counsel on both sides have argued the case upon the hypothesis that the contract set out in the bill, if made, was valid. The contention between them is only as to the sufficiency of the proof of its existence. Our further examination of the case will be upon this basis, and our remarks will be confined to that subject.

The alleged contract is thus set out in the bill. Speaking of her marriage to Kesner, the appellant says : " It was then agreed, and has always since been agreed and understood between herself and her husband, that she was to take no interest in his property, and he was to take no interest in hers. On their marriage they settled on a farm owned by Mr. Kesner in

this county of Washington, and in pursuance of this agreement she relinquished her rights in this land."

With reference to the conveyance by herself and Kesner to Sheffy, executor of Hull, and the conveyance by Dutton and wife to Kesner, she says: " Your oratrix being assured this was an exchange of land, and that she would thereby acquire an interest in this land exchanged for her land, assented to it. Your oratrix never would have consented to a sale of her land for money, or to any arrangement which would have deprived her of her inheritance in her land, and have her fee-simple converted into a mere dower right. With this distinct understanding between her husband and herself, and believing she would have in the Cedarville land the same rights she had in her own land, she assented to this arrangement. But being a *feme covert*, and ignorant of business, she intrusted the whole management of her business to her husband."

She claims one-half of the land free from her husband's tenancy by the curtesy, and the reversion of one-half of the residue at her husband's death.

While Kesner, in his schedule, speaks of his wife's means as having chiefly paid for the property in question, he is wholly silent as to any contract between them. She claims three-quarters, while his concession is only to the extent of one-half; and he does not put that admission upon any ground of right growing out of a contract. They seem not to have understood her claim alike. His deposition was subsequently taken, but he was asked no question upon the subject. In Dutton's deposition this question was asked: " Was the trade and exchange intended to preserve to Jane Kesner the same rights in the Cedarville land which she had in the Lyon's Gap land ? " — *Ans.* " This was my understanding of it." From whom or in what way he got his understanding is not disclosed.

James C. Porterfield, who married the sister of the appellant, was present at her marriage to Kesner, and had known them both thirty years, testified fully as to the means which came to Kesner in right of his wife. He was asked no question and said nothing as to any contract between them. Mrs. Porterfield, the sister, also testified. At the close of her deposition this question and answer are found: " After the trade for the

Cedarville land, did you hear Mrs. Kesner claiming it as her land?"—*Ans.* "I don't recollect hearing her claim it as her land."

There is no other testimony in the record bearing in any wise upon the subject. It is perhaps not a violent presumption that the appellant knew in 1852 that Dutton and wife conveyed the land to her husband alone, and that she knew he treated it as exclusively his in 1862, by conveying it, without her concurrence, to Bekem in trust to secure the debt to Greenway. It does not appear that she set up any special claim, or alleged the contract set up in her bill, until Kesner went into bankruptcy in 1873. But irrespective of those deeds, it is too clear to admit of doubt that the contract set forth in the bill is wholly unsustained by the proofs in the record. See *Harris's Ex'rs* v. *Barnett et als.*, 3 Gratt. (Va.) 339.

*Decree affirmed.*