## *In re* THOMAS WOOD, Bankrupt.*

*(District Court, S. D. Ohio.   January, 1881.)*

1. HUSBAND AND WIFE—SEPARATE PROPERTY OF WIFE—MONEY GIVEN
   TO HER—OHIO ACT, APRIL 3, 1861.

   In Ohio, prior to the passage of the act of April 3, 1861, (58 Ohio
   Laws, 54,) money received by the wife became the property of the
   husband, unless the acts accompanying the gift imparted a different
   character to it; thus, if it was accompanied by an unequivocal decla-
   ration that it was for her separate use, it did not vest in the husband,
   but became her separate property.

2. SAME.

   Under the evidence in this case the money received by the wife prior
   to 1861 *held* to have been her separate property.

3. SAME.

   The sums received by her after the passage of the act of April 3,
   1861, by the terms thereof became her separate property.

4. RESULTING TRUST—PAYMENT OF PURCHASE MONEY—SUBSEQUENT AD-
   VANCES.

   When the purchase money is paid by A., and the title taken by B.,
   to raise a resulting trust for the benefit of A. the entire purchase
   money must have been paid by A.; or, if he paid a part only, such
   part must have been paid for some *aliquot* part of the property,—as a
   third or a fourth,—and such part must be ascertained with certainty,
   and such trust must arise at the time of purchase; it cannot arise by
   after advances.

5. BANKRUPTCY—CONVEYANCES IN EXECUTION OF CONTRACT.

   In bankruptcy, to support conveyances as made in pursuance and
   execution of a prior agreement, the terms of the agreement must have
   been definite and specific, and must be clearly established by compe-
   tent testimony.

6. DEBTOR AND CREDITOR—HUSBAND AND WIFE.

   A wife may become a creditor of her husband.

7. BANKRUPTCY—SETTING ASIDE CONVEYANCES—RESULTING TRUST—EX-
   ECUTION OF CONTRACT—REFERENCE—PREFERRED CREDITOR.

   In a proceeding by an assignee in bankruptcy, to set aside a convey-
   ance of land by a husband to his wife, through an intermediate party, it
   appeared that she had received various sums of money from relatives,
   to be invested in a home for her, (her separate property, and so recog-
   nized by the husband,) and $1,000 thereof was used in building and
   furnishing a house upon the land in question.   The title to the land
   was in the husband's name.   At the time of the conveyance the hus-
   band was insolvent.   *Held*, that there was no resulting trust in favor

*Reported by Messrs. Florien Giauque and J. C. Harper, of the Cincin-
nati bar.

of the wife; that the conveyances cannot be sustained as in execution of a contract to convey; that the wife was a creditor of the husband, and the conveyances were made to give her a preference, and must, therefore, be set aside. But, to the extent of the $1,000, she has an equity superior to other creditors, and should be first paid out of the proceeds.

8. OHIO—EVIDENCE—HUSBAND AND WIFE.

When, under the laws of Ohio, the testimony of husband and wife is incompetent.

9. HOMESTEAD—DOWER—INTEREST.

In Bankruptcy.

Exceptions to the report and findings of the register.

*W. W. Young*, for assignee.

*Devore & Evans*, for Mrs. Wood.

SWING, D. J. This case was referred to the register, and, from the report filed herein, we find that on the eleventh day of April, 1878, Thomas Wood executed to Sylvannus P. Evans a deed for 40 acres of land, and on the same day the said Evans conveyed to Eliza Wood, the wife of the bankrupt, the same land. The assignee attacks these conveyances as fraudulent, and the register reports that the conveyances were valid conveyances as against the creditors, and to this report and finding the assignee excepts.

On the part of the wife it is claimed that certain of her moneys were used by the husband in payment of the land, and in building of the house, under an agreement or understanding that she should have land for it, or that it should be secured by the land. This is denied by the assignee. It is also claimed by the assignee that the only evidence upon this question is that by the husband and the wife, and that by the statute of Ohio they cannot be witnesses concerning any communication made by one to the other, or act done by either in the presence of the other, and therefore all the testimony upon this point must be ruled out. Let us see what the evidence, outside of communications and acts between the husband and the wife, establishes:

*First*, the evidence of Thomas Wood is clear that there was received, either by him for her or by her, the following sums of moneys from her brothers and from her mother's estate :

In 1855, from W. S. McGovic, $550; in 1857, from a partition suit of her mother's property, $290; and in 1857, from W. S. McGovic, executor of Leroy McGovic, $550; in 1862, $300 from W. S. McGovic; and in 1864, from the executors of W. S. McGovic, $495. Eliza Wood also testifies clearly that these sums were received by her from these several sources. And I may remark that the parties offered to introduce in evidence four letters received by the parties inclosing the drafts, but these were, I think, improperly excluded by the register. There can, I think, be no dispute as to the wife having received, as her own money, these several sums, and this fact is established by evidence outside of any communication or act between them. One thousand three hundred and ninety dollars of this was received by her prior to the passage of the act of 1861,* and $795 of it after the passage of that act. Prior to the passage of that act, by the common law the money received by the wife became the property of the husband, unless a different character was imparted to it by the title by which it was received. But if the gift of this money was accompanied by an unequivocal declaration that it was to and for her own separate use, it would not vest in the husband, but would remain the separate property of the wife. *Quigly* v. *Graham*, 18 Ohio St. 42; *Kesner* v. *Trigg*, 98 U. S. 54.

The evidence of the wife and husband is clear and explicit that $1,000 of this money was used in building the house and furnishing it. And the wife testifies clearly that when the money was remitted to her by her brother and put into the house, it was with the directions that it was to be for her a home; and the husband testifies clearly that that sum was put in the house as her money, and that it was not received by him as his own money but as the money of the wife, so that the donors—in regard to the $1,000, by their direction as to the investment and use for which this money was to be held—stamped upon it the character of the separate property of the wife, and the husband never asserted to it any title by virtue of his marital rights, but treated it as her separate

*Act of April 3, 1861, 58 Ohio Laws, 54.—REP.

property. But it was different with regard to the $290 received by him from her mother's estate; no such separate quality was imparted to it, and it became the property of the husband. As to the sum of $300 received from her brothers in 1862, and that of $495 received from them in 1864, by the law of Ohio it was the separate property of the wife, and the husband had no title to it. As to the sum of $44 in 1877, and that of $45 in 1878, the only proof of the payment of these is by the wife that she paid it to him, and by him that he received it from her. I think, under the law of Ohio, this evidence will have to be excluded, which, as to these items, leaves them without proof.

Let us now go back to the question of the rights of the wife growing out of the investment of the $1,000 in building and furnishing the house. The title to the land upon which it was built was in the husband's name. Did the payment of this sum for this purpose create a resulting trust in her favor to the extent of the money paid. To raise such a trust where the purchase money is paid by one and the title taken by another, the entire purchase money must have been paid by such party; or if a part only be paid such part must be paid for some *aliquot* part of the property, as a fourth, a third, or a moiety, and there must be no uncertainty as to the proportion of the property to which the trust extends. *Olcott* v. *Bynum*, 17 Wall. 44. And, again, such a trust must arise at the time of the purchase; it cannot arise by after advances. Id.

The facts in this case do not bring it within any of these requirements. It cannot, therefore, be said that this payment created in the wife a resulting trust in the title of any specific part of this land, by which the conveyance to the wife can be upheld.

Can the conveyances be upheld as the execution of an agreement for a conveyance by the husband to the wife, as the consideration of the money received? Conveyances of real estate, in pursuance and execution of a prior agreement, have been upheld in bankruptcy, but it has only been where the terms of the agreement have been specific and definite, and clearly established by competent evidence. *Kesner* v.

*Trigg,* 98 U. S. 50; *In re Jackson Iron Manuf'g Co.* 15 N. B. R. 438.

The only evidence to support this contract to convey is that of the husband and the wife. If this evidence were competent, it does not describe the terms of the contract, and is too general in its nature and character to establish the existence of such a contract. The conveyance cannot, upon this ground, be sustained.

Can the conveyances be supported upon the ground that it was a conveyance to the wife by the husband in payment of a debt due from him to her? I think, in equity, that the wife, at the time this conveyance was made, was the creditor of her husband; and, in law, she occupied the same relation to the extent of the sum of $1,000 invested in the house, and the sum of $300 received in 1862, and that of $495 received in 1864, as any other creditor. The $1,000 was given her for a specific purpose as her own means, and was so treated by the husband. The other two sums were her separate property by the laws of Ohio, and it does not appear that she had ever parted with her title to it, but that it was always treated by her husband as her separate property. That a wife may become the creditor of her husband is clearly laid down by Story in his Equity Jurisprudence, § 1373.

As to the sum of $1,000 invested in the building and completing of the house it is clear to my mind that her equities are superior to those of other creditors. It was her property—her means—which brought the house into existence. But as to the $300 and $495 she occupied no such position; she was a general creditor, with no greater equities than any other general creditor.

With this view as to her rights as a creditor, can these conveyances be supported? At the time they were made the husband was insolvent. He made these conveyances to place the property beyond the reach of his creditors, and this gives her a preference over them, and this evades the provisions of the bankrupt law. The wife knew of his insolvency,—that such was the purpose of the husband, and that such would be the effect of the conveyance. And whilst I do not find the

existence of any actual fraud, yet under such circumstances, as againt the creditors, the bankrupt law declares the conveyance fraudulent. And the conveyance, even as to the $1,000, cannot be supported as a conveyance of the particular piece of property. The conveyances will therefore be set aside, and the assignee will be ordered to set off and assign to the bankrupt a homestead, and proceed and sell the real estate subject to the wife's contingent right of dower, unless she shall otherwise agree.

The $1,000 invested by her in the house shall be first paid her out of the proceeds of the sale. *Glidden* v. *Taylor*, 16 Ohio St. 509; *Oliver* v. *Moore*, 23 Ohio St. 473; *Same* v. *Same*, 26 Ohio St. 298. But, inasmuch as she has been in the enjoyment of the house, this sum will be without interest.

As to the two sums of $300 and $495, making together $795, she is declared to be a general creditor, but without interest to the date of the bankruptcy, as the interest seems to have been paid up to that period.

This case will be referred to the register, to proceed, in pursuance of this finding, to have the estate closed up as speedily as circumstances will admit.