## McCORMICK v. HAMMERSLEY.

MARRIED WOMEN'S ACT; HUSBAND AND WIFE; EQUITY; SPECIFIC
PERFORMANCE; COMPENSATION; EQUITY PLEADING
AND PRACTICE.

1. R. S. D. C., Secs. 727 to 730, known as the Married Women's Act, do not change the common law rule that contracts between husband and wife are void at law and cannot be enforced.

2. The sole effect of that act is to abolish the control of the husband over his wife's separate estate, and to dispense with the necessity of his intervention in regard to it in dealing with third parties.

3. Agreements between husband and wife which are void at law may be sustained in equity; and a verbal agreement by a wife to convey her separate estate, consisting of unimproved lots, to her husband in consideration of the erection by him of improvements thereon, for the benefit of their family, is enforceable in equity, after the wife's death, by the husband against the wife's representatives, where he has erected the improvements upon the faith of her promise.

4. A court of equity will, in such a case, allow the husband compensation for his expenditures, in preference to decreeing specific performance of the agreement.

5. A bill in equity seeking the specific performance of a contract to convey real estate, described the property as "part of lot 9 in square 435," and "part of lot 6 in square 353": *Held*, Demurrable on the ground that the description was not sufficiently specific. Such a description necessarily implied that each of the two lots had been subdivided into two or more parts, but there was nothing to indicate which parts were intended.

No. 80.   Submitted September 25, 1893.—Decided November 6, 1893.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia, holding an equity term, sustaining a demurrer to and dismissing a bill for specific performance. *Modified, and cause remanded.*

THE COURT in its opinion stated the case as follows:

This is a suit to enforce specific performance of an agreement between husband and wife for the conveyance by the latter of certain real estate to the former on condition that he would construct some buildings upon the property for the benefit of their family.

Laura McCormick, whose maiden name seems to have been Laura Hammersley, was married on January 26, 1885, to the appellant, Michael G. McCormick. At 'that date she was the owner in fee simple of certain real estate in the city of Washington, described in the bill of complaint filed in this cause as "part of lot 9, in square 435, being of the dimensions of about 20 by 30 feet"; and "part of lot 6, in square 353, being of the dimensions of about 25 by 100 feet." The first piece of land had on it a stable of little value; and the other a brick building dilapidated and unfit for habitation,

For the purpose that the property should be rendered productive of income for the benefit of the family, composed of the husband and wife, a verbal agreement was made between the two—"at the date of the marriage" (January 26, 1885), it is said—that the husband should, by the expenditure of his own money, erect two brick dwellings upon the part of lot 6, referred to; and that thereupon the wife should convey the property to him, including both lots. The appellant, in pursuance of the agreement, proceeded forthwith to erect the two brick dwellings on lot 6, at an expense of $1,678.10; had the houses ready for rent in July, 1885; and subsequently made other expenditures, both upon the stable and the houses, to the amount of $516.54. He went into possession, it is stated, of both lots, and has continued in such possession to the present time, paying the taxes thereon, and the property thus improved became a source of revenue to the family.

Laura McCormick, the wife, died without issue in 1891, never having executed the conveyance of the property to her husband, although she had frequently in the meantime and even a short time before her death, which was rather unexpected, avowed her intention so to do. In consequence of this, the legal title passed to her collateral relatives, the appellees, some of whom are minors. The husband, Michael McCormick, now seeks specific performance of the agreement between him and his wife; and files the bill in this cause to have the legal title vested in himself.

There are twelve defendants, seven of whom are minors, and five are of full age in law. The minors appeared by guardian *ad litem*, and filed the customary formal answer submitting their interests to the protection of the court. To this answer a replication has been filed; but no further proceeding has been had upon it. The adult defendants interposed for their defense a demurrer; and upon the hearing of this demurrer in the special term, it was sustained as well taken, and a decree was thereupon entered, dismissing the bill. From this decree the present appeal was sued out to the General Term; and under the provision of the act of Congress which created this court, that appeal is now before us for determination.

*Messrs. Shellabarger & Wilson* and *Mr. A. A. Hoehling, Jr.*, for the appellants:

1. The fact that the wife when she made this contract, was a married woman, does not distinguish the case in any degree from a case where both contracting parties are strictly *sui juris*. R. S. D. C., Secs. 727-8-9; *Keyser* v. *Hitz*, 2 Mackey, 473; *Stickney* v. *Stickney*, 131 U. S., 237.

2. Although the general proposition, applicable to bills for specific performance, that the right to such relief is not an absolute one, but rests in the sound discretion of the court, is true, the discretion which may be exercised is not an arbitrary or capricious one, but is controlled by settled principles of equity. *Willard* v. *Tayloe*, 8 Wall., 567; 1 St. Eq. Jur., Sec. 742. In a proper case the right to a decree for specific performance is as absolute as the right to a judgment on a promissory note. 2 Lead. Cases in Eq., H. & W. notes, p. 695, and cases cited; 3 Pom. Eq. (1st ed.), Sec. 1404.

3. The promise by the appellant to improve his wife's real estate, was not a promise to do a thing which the law required him to do; while the promise by the wife would be, and is, good as a gift from her, under and on the faith of which the husband made valuable improvements. Such a promise is enforceable in equity when acted upon. 1 Lead.

.Cas. in Eq., H. & W. notes, p. 734, and cases cited; *King* v. *Thompson*, 9 Pet., 204; *Neale* v. *Neale*, 9 Wall., 1.

4. If the appellant is not entitled to specific performance, he is entitled under the prayer in his bill for general relief to compensation for the money expended by him on the faith of his wife's promise.    3 Pom. Eq. Jur. (1st ed.), Sec. 1410, and cases cited; 106 Mass., 232; *Watts* v. *Waddell*, 6 Pet., 389; *Stephens* v. *Gladding*, 17 How., 455, and cases cited; *Root* v. *Railway Co.*, 105 U. S., 194; *Mobile County* v. *Kimball*, 102 U. S., 691; *King* v. *Thompson, supra.*

5. This case is taken out of the operation of the Statute of Frauds by the performance averred in the bill.    *Neale* v. *Neale, supra*; *France* v. *France*, 4 Halstead's Ch., 650; *McClure* v. *McClure*, 1 Bar., 374; *Eckert* v. *Mace*, 3 Penn. & Watts, 364; *Erick* v. *Kern*, 14 Sergeant & Rawle, 267.

*Mr. E. H. Thomas* for the appellees:

1. The husband cannot be called a *bona fide* purchaser, and a court will not, in a case like the present one, either decree specific performance or compensation.

There are no authorities authorizing an inference that a husband could sue a wife at law or in equity to enforce a purely executory contract. *Jenne* v. *Marble*, 37 Mich., 324; Schouler, husband and wife, Sec. 174; *Ex parte Thomas*, 3 Greenl., Me., 50; 2 Kent, 168; *Butler* v. *Buckingham*, 5 Day, Conn., 492; *Lane* v. *McKeen*, 15 Me., 304, even under a written agreement between them, and where the husband has paid or performed the consideration fully. *Hogan* v. *Hogan*, 89 Ill., 436; *Johnson* v. *Johnson*, 16 Minn., 512.   It is not stated by the bill whether the land is the separate property or is the equitable separate estate of the wife or her statutory estate.   Though a married woman come into possession of real estate after the passage of the Married Women's Act of 1869, if her title be derived through a will which took effect prior to the passage of the act, her rights in the property are not affected by the act, but are to be determined by the common law.   *White* v. *Hilton*, 2 Mackey, 339.   If

a specific performance through failure of title or otherwise is impossible, and the court is of necessity obliged to refuse the remedy of a specific enforcement, it will not in general retain the suit and award compensatory damages. *Hatch* v. *Cobb*, 4 Johns., ch. 559; *Kempshall* v. *Stone*, 5 Johns., ch. 194; *Doan* v. *Mawsey*, 33 Ill., 227; *Gupton* v. *Gupton*, 47 Mo., 37; *Sternberger* v. *McGovern*, 56 N. Y., 20.

2. The description of the property, if every other requisite has been met, is insufficient. The description is part of lot 9, in square 435, and part of lot 6, in square 353. It is not alleged that the contract embraced the only property of the wife in the lots or that she had no other property. *Repetti* v. *Maisak*, 6 Mackey, 369. A contract for the conveyance of lands, which a court of equity will specifically enforce, must be certain in its terms and in the *description* of the property, and the estate to be conveyed. *Preston* v. *Preston*, 95 U. S., 200.

Mr. Justice Morris delivered the opinion of the Court:

The statement of facts which we have given is based upon the allegations of the bill of complaint, which, of course, for the purpose of this argument, must be assumed to be true.

We are of opinion that the act of Congress of April 10, 1869, incorporated into the Revised Statutes of the United States for the District of Columbia as Sections 727 to 730, both inclusive, and commonly known as the Married Women's Act, does not change the rule of the common law that contracts between husband and wife are void and cannot be enforced. That statute was confessedly intended to emancipate the property of married women from the control over it which was given to their husbands by the common law; and it should not be construed in such manner as to give husbands greater influence over their wives and greater power over their estates than they had before the statute. And yet this would be the legitimate and inevitable result of the enactment if its effect was to remove all limitation upon the power of husband and wife to contract with each other. This

limitation is based upon very different grounds of public policy from those which, before the statute, restricted a married woman's contracts with third persons. It was her incapacity in the latter case that the legislature sought to remove, and not the mutual restraint that bound husband and wife alike as the result of the marital relation.

The effect of the common law was to suspend the wife's power of control over her estate, and to vest it to a great extent in the husband. This control the statute restores to her. But the statute does not seek to modify the relation of husband and wife to each other. It does not, for example, affect the rule of the common law which makes them incompetent to testify for or against each other. It does not affect his liability to provide for her support and maintenance; nor does it abolish the rule that the wife's earnings during marriage, if she has any, belong to her husband. *Seitz* v. *Mitchell*, 94 U. S., 580; *Kesner* v. *Trigg*, 98 U. S., 50. In other words, the sole effect of the statute is simply to abolish the control of the husband over her separate estate, and to dispense with the necessity of his intervention in regard to it in dealing with third parties; and it does not make them competent to contract with each other. *White* v. *Wager*, 25 N. Y., 328.

But while agreements between husband and wife are undoubtedly void at law, they may be sustained in equity. In the case of *Wallingsford* v. *Allen*, 10 Peters, 583, the Supreme Court of the United States said:

"Agreements between husband and wife, during coverture, for the transfer from him of property directly to the latter, are undoubtedly void at law. Equity examines with great caution before it will confirm them. But it does sustain them, when a clear and satisfactory case is made out, that the property is to be applied to the separate use of the wife."

Such agreements are generally sought to be sustained by the wife or her representatives against the husband or his representatives, or creditors who claim to have become subrogated to his rights. It is not often that the case is pre-

sented which we have before us now, of a suit by a husband against his wife or her representatives, to enforce an alleged agreement between her and himself. But it is not apparent that there is any difference in principle between this case and those in which the husband or his representatives sue, further than that in the latter class of cases the legal duty imposed upon the husband to provide for the support and maintenance of his wife is deemed an adequate consideration, while in transfers from the wife to the husband a valuable consideration must be shown. *Winans* v. *Peebles*, 32 N. Y., 423.

In the case of *White* v. *Wager*, 25 N. Y., 328, and in that of *Winans* v. *Peebles*, 32 N. Y., 423, deeds from a wife to a husband were held to be void, and the court refused to enforce them; but the decision was put distinctly upon the ground that they were voluntary and without valuable consideration. In both cases it was declared that it was competent for the parties claiming under the deeds to show as a proper basis for equitable relief, that there had been valuable consideration moving from the husband to the wife for the transfer.

Of course, contracts between husband and wife which are purely executory, will not be enforced at the suit of either party. Equity will not enforce void contracts any more than will the common law. But when a contract, void only by reason of the incapacity of the parties to contract with each other, as in the case of husband and wife, has been fully performed on the one side and in good faith, and it would operate as a fraud upon him if the other party to the contract were to decline or refuse to perform his or her side of it, the right of a court of equity to intervene must be regarded as beyond question. Story's Equity Jurisprudence, Sec. 759.

We regard the rule laid down in the case of *Livingston* v. *Livingston*, 2 Johnson's Chancery Rep., 537, by Chancellor Kent, as being decisive of this point. In that case there was an agreement between husband and wife not very unlike the

agreement in the present case. The husband had performed his part of the agreement; but the complete execution of the contract failed in consequence of the sudden death of the wife, whose estate descended to her minor children. Upon the application of the husband to a court of equity, the agreement was decreed to be consummated. The principle of this decision seems to be fully sustained by the tenor of all the authorities, English and American, and it is certainly based upon justice.

Thus far we have treated this case as though the agreement or understanding set forth in the bill of complaint had been fully proved, and had been clearly shown to have been fair and reasonable in every respect, free from all suspicion of undue influence on the part of the husband, and based upon a valuable and adequate consideration moving from the husband to the wife. But while, upon a demurrer, which admits as true the allegations of the bill of complaint, we might assume this contract to be one which equity will enforce, it is apparent that, in the present condition of the pleadings, we can render no final decision upon the subject. The infant defendants are not before us in this appeal. There can be no decree against them except upon satisfactory and convincing proof; and the proof may fail utterly to sustain the complainant's case.

But even though the complainant may be able to prove beyond reasonable doubt the allegations of his bill, it is not entirely clear that specific performance of the agreement should be decreed. We are of opinion that adequate and complete justice can be done to the complainant by allowing him compensation for his expenditures in the premises. In this conclusion we are supported by the authority of the Supreme Court of the United States in the case of *King's Heirs* v. *Thompson*, 9 Peters, 204, in which, under circumstances quite analogous to those of the present case, similar compensation was allowed. See also to the same effect Story's Equity Jurisprudence, Sec. 799, and cases there cited.

But it is not perhaps clear, as a question of pleading, that the complainant would be entitled to this relief without a

special prayer to that effect in the bill. This point, however, it is unnecessary for us to decide here, inasmuch as the bill of complaint is defective in another respect, and the complainant must amend it in order to entitle himself to any relief in the premises.

The property, which is the subject matter of the alleged agreement, is described as "part of lot 9, in square 435," and "part of lot 6, in square 353." This description necessarily implies that these two lots have been subdivided, each of them, into two or more parts; and we are left wholly in the dark as to which parts are intended. It may possibly be that, by an investigation of the land records of the District of Columbia, it might be ascertained what parts of these lots were owned by the deceased, Laura McCormick; and from that it might be inferred what property was the subject of this contract between her and her husband. But there are very obvious reasons for supposing that such an investigation might be exceedingly unsatisfactory. Moreover, if the complainant should be found entitled to specific performance of the alleged agreement, the appointment of a trustee to make conveyance for the minors would be a necessary incident to the relief which he seeks. And indeed the appointment of such a trustee is very properly prayed for in the bill. Now, it would be most unreasonable to expect of such a trustee that he should search the land records to ascertain what property he was expected to convey.

The mere statement of this difficulty is sufficient to show the imperfection of the bill of complaint. A description of property, which enters into and affects muniments of title, should be sufficiently specific to enable a person from the bill itself to identify the property; and should not be left to the result of investigation or inquiry into other documents.

On the ground of the insufficiency and imperfection of the bill of complaint in this regard, the demurrer to the bill was properly sustained, and the complainant must amend, if he would proceed with the cause. And, inasmuch as we are of opinion that there is stated in the bill a good cause for com-

pensation, even though specific performance may be refused, the complainant should have an opportunity to amend his bill in this and other particulars, as we have indicated. For the purpose of allowing him this opportunity, *the decree of the Supreme Court of the District of Columbia, in special term, should be modified, in so far as it dismisses the complainant's bill, and the cause should be remanded to that court, with directions to enter an order sustaining the demurrer, but with leave to the complainant to amend his bill as he may be advised within such reasonable time as the court may appoint; and for such further proceedings according to law as may be just and proper, and it is so ordered.*

Under the special circumstances of this case, the costs accruing upon the appeal must be paid by the complainant.