## KAUIMAKAOLE LAZARUS *v.* ALEXANDER LAZARUS.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED OCTOBER 6, 1899.        DECIDED MAY 4, 1900.

FREAR AND WHITING, JJ., AND CIRCUIT JUDGE PERRY IN PLACE OF JUDD, C.J., ABSENT.

To create a resulting trust where the purchase money is paid by one and the title is taken by another, the entire purchase money must have been paid by such party, or if a part only be paid such payment be paid for some aliquot part of the property, as a fourth, a third or a moiety, and there must be no uncertainty as to the proportion of the property to which the trust extends. And again such trust must arise at the time of the purchase; it cannot arise by after advances.

A wife is not entitled to dower in lands of her husband, of which he was not beneficially seised. Where a husband is seised of an estate to hold in trust for another, it is a familiar rule that the wife shall not be endowed of such estate although he is manifestly seised of the fee.

### OPINION OF THE COURT BY WHITING, J.

Bill to admeasure dower. Decree for defendant before Circuit Judge Stanley, from which plaintiff appeals. The decision rendered by Judge Stanley is as follows:

"The plaintiff in her petition alleges that she is the widow of one Joseph Lazarus who deceased on June 25, 1897; that the deceased was during his lifetime and his marriage with the plaintiff seized and possessed in fee simple of certain premises being Lot 501 situated on Kinau street and Lunalilo street, Honolulu, described in R. P. (Grant) No. 3517 issued to said deceased on January 29, 1891; that on July 27, 1893, and during their marriage the said Joseph Lazarus conveyed the said premises to the defendant Alexander Lazarus, who is now in possession thereof, claiming title as grantee of said Joseph Lazarus. She

24

further alleges that she never released her right of dower in the premises and sets forth a demand upon the defendant to set apart her dower and his refusal to do so, and concludes with a prayer that her dower may be admeasured and set out by this court.

The defendant in his answer admits the marriage of plaintiff to Joseph Lazarus, and the death of Joseph Lazarus as alleged by the plaintiff. He denies that Joseph Lazarus was at any time seized or possessed in fee simple or at all of a dowable estate in the premises, or that he was entitled to any beneficial estate or interest therein or in any part thereof. On the other hand he claims that the premises were purchased by him from the Hawaiian Government and that he paid the purchase price therefor with his own money, but that the Royal Patent No. 3517 therefor, intended for him was inadvertently and unintentionally taken out in the name of said Joseph Lazarus, and alleges, that for the purpose of correcting said error the said Joseph Lazarus in July 27, 1893, executed a deed of the premises to him.

He admits that he is in possession of and claiming title to said premises in fee simple, but denies that he so possesses or claims title thereto as the grantee of said Joseph Lazarus; he further admits plaintiff's demand upon him for dower and his refusal, also that the plaintiff has never released any dower right in the premises, but alleges that she is not and never was entitled to any dower right therein.

To this answer the plaintiff filed a formal replication.

The sole question to be determined in this case is whether Joseph Lazarus deceased, was ever seized or possessed of a dowable estate in the premises in question. After considering the evidence introduced for the plaintiff and defendant, I find the facts proven to be as follows: On November 13th, 1890, a number of lots of land including the premises in question were sold by this government at public auction. Joseph Lazarus, late husband of the plaintiff, was present at the sale and two lots Nos. 501 (the land in question) and 502 were knocked down to him for the sums of $1256 and $1800 respectively, and that for lot 502 he paid the full amount of the purchase price, and but 25% of the purchase price of lot 501, stating at the time to James H. Boyd, clerk in the Interior Office, that the latter lot did not belong to him but was purchased for another person. On January 7th, 1891, the records of the Postal Savings Bank in Honolulu show that the defendant withdrew $1240 from his deposit. On the same day the defendant accompanied the said

Joseph Lazarus to the office of the Minister of the Interior and there paid to Boyd the balance due on the premises, and at the request of the deceased the receipt for the whole of the purchase money was made out in the name of the defendant and handed to him (see Exhibit B).

The Royal Patent for the premises was issued on January 29th, 1891, to the deceased and delivered on March 5th. There is some discrepancy between the testimony of Boyd and the defendant as to how it was that the patent was issued in the name of Joseph Lazarus, but in view of all the other circumstances of the case, I consider it immaterial. Shortly after the purchase the defendant entered upon and took possession of the premises and commenced making improvements thereon, building two houses and laying water pipes, and paying the water rates and taxes thereon to the present day. The first house was erected by him at a cost of $925 and the second house, occupied by himself, was moved thither from some other premises leased by him from the Bishop Estate. The new house was occupied by one Harry Juen and his wife, granddaughter of the plaintiff as the tenant, as I believe, of the defendant at a monthly rental of $20. It was claimed by the plaintiff and her witnesses that the defendant occupied the premises by the permission of her deceased husband on his undertaking to pay the taxes and water rates on the land, and that the new house erected on the premises was built by the deceased for the use of Juen and his wife,— Juen testifying that he was a tenant under the deceased and not under the defendant. I do not believe that this claim is founded on truth. Juen admitted that on the request of the defendant he drew up a lease of the premises in which he was named as the lessee and the defendant as his lessor, and that the body of Exhibit L, purporting to be one-half of the lease is in his handwriting, though he denies the genuineness of his signature thereto. It also appears that the defendant on the 5th of May, 1891, took out a policy of fire insurance on the building which is described in the body of the policy as "the one-story frame shingled roof building *occupied by tenant.*" (See Exhibit M.)

On July 27th, 1893, the deceased made a deed of the premises to the defendant. The evidence discloses that about this time the deceased had instituted divorce proceedings against the plaintiff, his wife, and that the defendant was a witness for his father. The plaintiff claims, falsely as I believe, that the deed in question was the consideration paid by the deceased to the de-

fendant for the testimony then given and that the defendant so admitted to her. This is absolutely denied by the defendant. It must be remembered in this connection as the evidence shows that the Lazarus household has ever been at enmity with itself, and that in their domestic circle every man's hand has been against his neighbor. They have had numerous law suits *inter se,* and the various combinations on either side have been as numerous as those law suits. The defendant doubtless seized this opportunity of persuading the deceased to do what he had often urged him to do.

The law in a case of this kind requires the evidence to be full, clear and satisfactory. I find that the evidence in this case admits of no other conclusion than that the land was bought by the deceased for the defendant, and that the defendant paid for it with his own money, and that the deceased never had any beneficial estate or interest in the land or any estate which would entitle his widow, the present plaintiff, to dower therein. It is urged by the plaintiff's counsel that the defendant, having accepted a conveyance from the deceased, is estopped in this action to deny the title of his grantor. Upon the same showing as is made in this case, it seems to me that if the deceased had refused to make the conveyance a court of equity would have declared that he was a mere naked trustee of the premises and would have compelled him to execute such a conveyance. The fact that the deceased saw fit to do so without the interposition of a court of equity should not and in my opinion does not prejudice the defendant.

I therefore think that the evidence offered on the part of the defendant tending to dispute the title of the deceased and to deny seisin was properly admitted, and in arriving at a decision I have accordingly considered the same. Upon this view of the facts and the law applicable thereto I find that the bill should be dismissed. It is so ordered."

We have examined the record and find that the evidence supports the findings of fact of the trial judge. It is strenuously urged by counsel for plaintiff that no trust resulted to defendant because the purchase money was not wholly paid by him at the

time of purchase; but this is one of the facts found as the basis of the decision.   To be sure, at the auction sale the father, Joseph Lazarus, bid in the lot and deposited a fourth part of the purchase price at the same time declaring he was purchasing for another party but buying another lot at the same time for himself.   At the time of the auction sale, Joseph Lazarus acquired no estate in fee or otherwise in the land, only a mere right to complete the purchase and he was not then the owner and accordingly the widow had no right of dower; even if Joseph Lazarus had actually bid the lot in for himself, he could have sold the right acquired to another, or even abandoned his right, and there would be no dower interest.   At the completion of the sale in January, 1891, the whole purchase money was paid by Alex. J. Lazarus although the Royal Patent was issued in the name of Joseph Lazarus yet a receipt for the purchase money for this lot together with the Royal Patent fee was given in the name Alexander J. Lazarus by a clerk of the Interior Department.   Possession was taken by Alexander and he alone exercised rights of ownership over the lot.   Although the Royal Patent was in the name of Joseph yet he was at no time the owner with beneficial interests therein, but merely a holder of the legal title in trust for Alexander.   The facts proven have brought this case within the law governing resulting trusts.·

"To raise a trust by implication, or operation of law, an actual payment or actual loan of the money by the *cestui que trust* at the time of the purchase must be shown."  (*Steen v. Steen,* 2 Johns. Ch. 20.)   "To create a resulting trust where the purchase money is paid by one and the title is taken by another, the entire purchase money must have been paid by such party, or if a part only be paid such part must be pair for some aliquot part of the property, as a fourth, a third or moiety, and there must be no uncertainty as to the proportion of the property to which the trust extends.  (*Olcult v.* Bymun, 17 Wall. 44.)  And again such trust must arise at the time of the purchase; it cannot arise by after advances."  *In re Wood,* 5 Fed. 443.   See also *Jackson v. Moore,* 6 Cow. 726; *Pinnock v. Clough,* 16 Vt. 162;

*Prescott v. Walker*, 16 N. H. 340; *Sunderland v. Sunderland*, 19 Ia. 325.

Section 1906 of the Civil Laws provides that "Every woman shall be endowed of one-third part of all the lands *owned* by her husband at any time during marriage in fee simple, in freehold, &c., unless she is lawfully barred thereof."

In order that the widow may have dower, the husband must be beneficially seized, and, therefore, there is no dower in lands held by the husband as mere trustee for other persons. (10 Am. & Eng. 2d Ed. 132; *Hallett v. Parker*, 39 At. R. 583; *Stanwood v. Deering*, 14 Me. 290.)

A wife is not entitled to dower in a trust estate any further than her husband had a beneficial interest therein. *Prescott v. Walker*, 16 N. H. 340. Where a husband is seised of an estate to hold in trust for another, it is a familiar rule that the wife shall not be endowed of such estate although he is manifestly seised of the fee. *Hugunnin v. Cochrane*, 51 Ill. 305; *King v. Bushnell*, 121 Ill. 656; *Hopkinson v. Dumas*, 42 N. H. 296; *White v. Drew*, 42 Mo. 561.

In his brief counsel for the plaintiff claims that the circuit judge erred in the admission and rejection of testimony but does not specify the particular errors, and we must decline to search the stenographer's notes to ascertain them. Counsel also asks this court to refer to his brief filed in the circuit court; this request has often been made by other counsel in other cases and we have orally informed them that a brief must be prepared for and filed in the Supreme Court and we declined to consider the circuit court brief as that of the Supreme Court. The briefs of counsel filed in the circuit court do not form a part of the record. Rules 1 and 2 of the Supreme Court require briefs for the Supreme Court. We call attention to this, not to reflect on counsel, but that in the future all counsel may realize that circuit court briefs are not considered by the Supreme Court.

Appeal dismissed.

*W. A. Henshall* for plaintiff.

*J. T. De Bolt* for defendant.