## TERRITORY *v.* HO ME.

## No. 1359.

RESERVED QUESTIONS FROM CIRCUIT COURT FIRST CIRCUIT.
HON. J. J. BANKS, JUDGE.

ARGUED FEBRUARY 24, 1922.                 DECIDED MARCH 8, 1922.

### COKE, C. J., KEMP AND EDINGS, JJ.

CRIMINAL LAW—*unlawful search and seizure—waiver.*

Allowing government officers to enter his home without a warrant under circumstances implying coercion did not constitute a waiver by defendant of his constitutional privilege against unreasonable search and seizure.

SAME—*same—by federal officer.*

Evidence obtained by federal officers through an unlawful search and seizure and thereafter delivered to territorial officers for use in a criminal prosecution of the party from whose possession it was taken is not admissible in evidence.

SAME—*same—motion for return.*

Evidence obtained through an unlawful search and seizure should be ordered returned to the defendant when he seasonably makes a motion requesting its return.

CONSTITUTIONAL LAW—*construction.*

The fourth and fifth amendments of the Federal Constitution are to be liberally construed.

COURTS—*stare decisis.*

In case of a conflict between a former decision of this court and a decision of the Supreme Court of the United States it is the duty not only of this court, but of all inferior courts, to follow the decision of the Supreme Court of the United States, the court of last resort in this jurisdiction.

#### OPINION OF THE COURT BY KEMP, J.

The defendant Ho Me was charged with the offense of unlawfully having in his possession certain opium or a preparation thereof contrary to the provisions of section

2075 R. L. 1915 as amended by Act 143 S. L. 1915. The offense was alleged to have been committed on or about March 22, 1921. Before a jury was selected or sworn the defendant interposed his verified motion for the return of certain personal property which was being held by the city and county attorney, which motion contains in substance the following allegations: That on March 21, 1921, he was in actual and legal possession of a certain room in a tenement house in Honolulu which was his home and place of residence; that on said day at about six o'clock p. m. he had just emerged from his said room and closed and locked the door, whereupon one C. R. Frazier, an internal revenue agent and officer of the United States, and one Allen, also an officer of the United States, placed defendant under arrest and took from his pocket the key to his said room, entered said room, searched it and seized therein two lamps, two pipes, two horns alleged to contain opium or a preparation thereof, and one scale, all the personal property of defendant; that said personal property is now in the possession of the city and county attorney who intends to use the same as evidence against the defendant; that the aforesaid search and seizure and carrying away of defendant's personal property as aforesaid were unlawful, made without defendant's consent and against his will and while he was under compulsion and arrest by said Frazier and Allen and without any search warrant, warrant of arrest or other legal process and in violation of defendant's rights under the Constitution of the United States and the fourth, fifth and sixth amendments thereof. Defendant prays that said personal property be ordered returned to him except any opium found in said horns, which he prays may forthwith be destroyed. Defendant further prays that the city and county attorney and his deputies and the said Frazier and Allen be prohibited from using and introducing in evidence against

him any and all said personal property upon the trial. The city and county attorney admits the truth of the allegations except those which charge compulsion and arrest and the manner in which the entry into said room was made. These allegations of the motion were controverted and the arresting officer Frazier testified that about the time stated in the motion he accosted Ho Me, whom he knew having arrested him on other occasions, and said, "Let's go inside;" that Ho Me objected, whereupon Frazier said, "Oh come on, come on, let's. You got the key; open up the door;" that Ho Me thereupon unlocked the door and they went inside. Frazier further testified that while they were talking he put his arm around Ho Me and "patted him on the back, just friendly, joshed him along." He also said he had arrested Ho Me on former occasions and that Ho Me knew him as an officer; that on going into the room the smoking layouts were found on the bunk, the opium in an urn on the table and the scale beside it, all of which were seized and carried away and Ho Me arrested. To the return and this evidence the defendant demurred and the circuit judge reserved the following questions to this court:

"1. Should the prayer of the defendant's motion hereinbefore set forth be granted under the pleadings, the evidence, the same being considered true, and the proceedings hereinbefore set forth?

"2. Is there a conflict between the decision of the supreme court of the Territory of Hawaii in the case of 'Territory v. Hoo Koon,' 22 Haw. 597, and the decisions of the United States Supreme Court in the cases of 'Gouled v. United States,' U. S. Adv. Ops. 1920-21, p. 311, (No. 250) argued January 4, 1921, decided February 28, 1921" (255 U. S. 298), "and 'Amos v. United States,' U. S. Adv. Ops. 1920-21, p. 316 (No. 114) argued December 13, 1920, decided February 28, 1921" (255 U. S. 313)?

"3. If such conflict exists should the circuit court follow the decision of the supreme court of the Territory of

Hawaii or the decisions of the United States Supreme Court?"

The defendant by demurring to the return and the evidence admits the truth of the evidence adduced in support of the return. The first question then to be considered is whether or not the evidence of Frazier, the substance of which is set out above, shows a waiver by the defendant of his constitutional rights. In the case of *Amos* v. *United States,* 255 U. S. 313, the following facts were held not to constitute a waiver. Two deputy collectors of internal revenue went to defendant's house and store "within his curtilage" and not finding him there told his wife that they were revenue officers and had come to search the premises for violations of the revenue law. The wife thereupon opened the store and the officers entered, found and seized a bottle of illicitly distilled whisky. They then went into the home of the defendant on the same premises where they found and seized more illicitly distilled whisky. The officers had neither a warrant for the arrest of the defendant nor a search warrant. The search was made in the daytime and in the absence of the defendant. In discussing the contention that the constitutional rights of the defendant were waived Mr. Justice Clark, speaking for the court, said: "The contention that the constitutional rights of the defendant were waived when his wife admitted to his home the government officers, who came, without warrant, demanding admission to make search of it under government authority, cannot be entertained. We need not consider whether it is possible for a wife, in the absence of her husband, thus to waive his constitutional rights, for it is perfectly clear that under the implied coercion here presented, no such waiver was intended or effected." This in effect constitutes a holding that had the defendant himself been present and acquiescent, as was his wife, the implied coer-

cion would nevertheless have prevented his acquiescent attitude from operating as a waiver of his constitutional rights. Applying this holding to the case at bar we conclude that the action of the defendant in opening his door and permitting the officers to enter under the circumstances detailed by the witness did not operate as a waiver of his constitutional rights. The refusal of the trial court to order the return of the illicit whisky seized under the circumstances above detailed and permitting it to be used as evidence against the defendant upon the trial were held to be in plain violation of the fourth and fifth amendments of the Constitution of the United States. (See also *Gouled* v. *United States,* 255 U. S. 298.)

It would not be possible to add to the emphasis with which the Supreme Court in the above and other cases has declared the importance of keeping unimpaired the rights secured to the people by these two amendments. In the *Gouled* case it is said that such rights are indispensable to the full enjoyment of personal security, personal liberty and private property. These rights are no less sacred than the right to trial by a jury, to the writ of *habeas corpus* or to due process of law. It has been repeatedly held by that court and reiterated in the *Gouled* case that these amendments should receive a liberal construction to the end that well-intentioned but overzealous executive officers may be prevented from gradually encroaching upon the rights secured by said amendments. The seizure in the case at bar when tested by the principles laid down in the cited cases is clearly in violation of the fourth amendment and to permit the use of the seized articles as evidence against the defendant would as clearly violate the fifth amendment.

But, says the Territory, the law in this jurisdiction is settled by the decisions of this court in *Territory* v. *Soga,* 20 Haw. 71, and *Territory* v. *Hoo Koon,* 22 Haw. 597, and

is to the effect that evidence obtained by an illegal search is not thereby rendered inadmissible. The facts in the Hoo Koon case differ in no material respect from the facts in the *Amos* case and yet the two courts reached opposite conclusions as to the disposition to be made of the illegally seized evidence. Under these circumstances we are bound to follow the Supreme Court of the United States —the court of last resort in this jurisdiction. (*Kapiolani Est.* v. *Atcherley,* 21 Haw. 441; *Colburn* v. *U. S. F. & G. Co.,* 25 Haw. 536, 543; *State Mutual Ins. Co.* v. *Craig,* 111 Pac. (Okl.) 325; *Frantz* v. *Saylor,* 12 Okl. 39; *Richards* v. *Green,* 32 Pac. (Ariz.) 266.) (Compare *Rubenstein* v. *Hackfeld,* 18 Haw. 126, which appears to hold to the contrary.)

The Territory also seeks to distinguish this case from the *Amos* and *Gouled* cases by the fact that the seizure was made by federal officers and the evidence seized by them voluntarily turned over to the city and county attorney. For authority it relies upon *Burdeau* v. *McDowell,* 256 U. S.   ; *Youngblood* v. *United States,* 266 Fed. 795, and *United States* v. *Burnside,* 273 Fed. 603. In the *Burdeau* case the Supreme Court held that the defendant was not entitled to have evidence returned to him which was being held by a prosecuting officer of the government after having been illegally and wrongfully taken from his possession by an individual in no way connected with the government. In the *Youngblood* and *Burnside* cases it is held that evidence obtained through an unlawful search and seizure by the state officers having no connection with the federal authorities is not inadmissible on the trial of the defendant in a federal court. It would require but one step beyond the principles announced in these cases to justify a holding that evidence obtained through an unlawful search and seizure by federal officers may be retained by the city and county

attorney and introduced in evidence upon the trial of the defendant in a territorial court, but having in mind the language of the Supreme Court in the *Gouled* case above referred to and the fact that the territorial courts derive their right to exist from federal law we are unwilling to take that step.

In conclusion we hold that the first and second questions should be answered in the affirmative. In answer to the third question we hold that in case of conflict between the decisions of the supreme court of the Territory of Hawaii and the decisions of the United States Supreme Court all inferior courts are bound .by the decisions of the Supreme Court of the United States.

*H. K. Ashford,* Third Deputy City and County Attorney (*W. H. Heen,* City and County Attorney, with him on the brief) for the Territory.

*C. S. Davis* (*Brown, Cristy & Davis* on the brief) for defendant.

