## STAKICH et al. v. UNITED STATES.

Circuit Court of Appeals, Ninth Circuit.
March 5, 1928.

No. 5312.

Criminal law ☞395—Evidence seized without search warrant from trespassers on abandoned farm held admissible.

Evidence seized by prohibition agents without a search warrant, in a building on an abandoned farm in which a still was being operated by defendants, *held* admissible against them, where they had no right in the building and did not reside there, but were themselves trespassers.

In Error to the District Court of the United States for the Northern Division of the District of Idaho; Charles C. Cavanah, Judge.

Criminal prosecution by the United States against Sam Stakich, alias Sam Stepish, and Louis Zupan. Judgment of conviction, and defendants bring error. Affirmed.

Robertson & Paine, of Spokane, Wash., for plaintiffs in error.

H. E. Ray, U. S. Atty., and Wm. H. Langroise and Sam S. Griffin, Asst. U. S. Attys., all of Boise, Idaho.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. Adjudged guilty upon four counts charging possession of intoxicating liquor, possession of property designed for the violation of the prohibition law, the manufacture of liquor, and the maintenance of a nuisance, the two defendants bring error.

Of the suggestion that it was error to impose punishment under counts 1 and 2, because the offenses of possessing liquor and property are merged in the offense of manufacture, it is only necessary to say that a contention of like character, but under circumstances much more persuasive, was rejected in Albrecht v. United States, 273 U. S. 1, 47 S. Ct. 250, 71 L. Ed. 505.

The principal question discussed grows out of the reception of evidence secured by government agents without a search warrant. Having been definitely informed of the location of an operating still, prohibition agents went to a lonely and remote place in the woods in northern Idaho, where they found a small abandoned farm. There had been a clearing of 15 or 20 acres, which had at some time been inclosed, or partially inclosed. For the most part, the fences were down, the windows of the unoccupied dwelling house were broken, and generally it had an abandoned appearance. There were also an old stable or barn and a log building which had been used as a blacksmith shop. When the agents approached they detected as coming from the log building a strong odor of fermenting mash, and when they came closer the odor became stronger, and they could also hear the "buzz of burners," which they recognized as a common accompaniment of a still in operation. The interior of the building was lighted, but the view through a small and only window was shut off by a gunny sack covering. From a door, however, the lock had been removed, leaving a round hole, peering through which they could and did see the defendants, a part of the set up still, and some barrels and other articles.

Getting no response to a demand for admission attending their announcement that they were federal prohibition agents, they forced their way in. A 100-gallon still was in operation with the gasoline burners going, and the liquor running off. Practically the whole room was filled with the still, numerous barrels of mash, and other accessories. A bedspring with bedclothes rested upon some of the mash barrels. A few small articles of food were found, but no cook stove or heating stove, or other articles of furniture, and, indeed, there was no room for household furniture. Clearly, it was a distillery, exclusively used as such, and in no sense a residence or dwelling. Steele v. United States, 267 U. S. 498, 45 S. Ct. 414, 69 L. Ed. 757.

To suppress the evidence, defendants relied entirely upon an affidavit made by one

of them, in which, in general terms, it was set up that at the time of their arrest they were residing in this "dwelling house (the distillery) of which they were the tenants, and in which they had the right to live and reside, and in which they ate their meals, slept, and lived." To meet this general statement the government produced the agents, who testified in substance that, when they were arrested, the defendants stated they did not own the premises, did not know who the owner thereof was, and that they had no lease or permission to occupy them. The record scarcely leaves room for doubt that they had simply taken possession of unoccupied property without leave of the owner, and were trespassers; but, in the most favorable view to them, the issue rested upon conflicting testimony which it was the province of the court to weigh.

We need not discuss questions of law which would properly arise had the defendants been the owners or in the lawful possession of the property. Being trespassers, they are in no position to question the right of the officers to come upon the premises. If it be conceded that, even in a case of this character, the actual possession of a trespasser cannot be forcibly invaded by one who has no better right, and if, as against the owner, the officers here had no right, it still remains true that the actual possession of the defendants, their possessio pedis, did not extend beyond the walls of the distillery. Hence, in going upon the premises outside of the distillery, the officers infringed no rights of the defendants, and when thus, by smelling, hearing, and seeing, they acquired direct and positive knowledge that crimes were being committed in their presence, they had a right to force their way into the building and arrest the perpetrators, and, incidentally, to search the room in which they were arrested.

The judgment is affirmed.