SCAFFIDO, Plaintiff in error, vs. THE STATE, Defendant in error.

CICERRELLO, Plaintiff in error, vs. THE STATE, Defendant in error.

*April 6—May 1, 1934.*

For the plaintiffs in error there was a brief by *Rubin & Zabel,* attorneys, and *W. B. Rubin* of counsel, all of Milwaukee, and oral argument by *Mr. Rubin.*

For the defendant in error the cause was submitted on the brief by the *Attorney General, J. E. Messerschmidt,* assistant attorney general, *William A. Zabel,* district attorney of Milwaukee county, and *Herman A. Mosher,* deputy district attorney.

FRITZ, J.   The evidence upon which the court concluded that there had been no illegal search of the defendants fairly established the following facts: Shortly after midnight on January 24, 1933, the police department of the city of Milwaukee was informed by telephone that an assault with intent to rob had been committed in a near-by suburb by a group of five men, who used an automobile, which was described as a Hudson, bearing license number 76,298; and a description given of one of the men was believed by the police department to fit the defendant Joseph Scaffido. There was an immediate radio broadcast by the police department of that information, and that was heard by Officers John J. McGarvey and John Flannery, who were detectives, and also by other officers of the department.   At about 1:45 a. m. those officers found a Hudson automobile with license number 76,298 at a soft-drink parlor in Milwaukee. McGarvey, Flannery, and five other officers entered that place and found Scaffido seated with Cicerrello and three other men in a booth.   McGarvey said to the five men: "I place you under arrest for assault with intent to rob."   Then without asking their consent, or having any warrant for their arrest or search, McGarvey searched Scaffido and Flannery searched Cicerrello, with the result that a revolver was found concealed in an inside pocket of the coat of each defendant.   The five men were taken to the police station and

warrants were issued for the arrest of the defendants and two of the other men on the charge of carrying concealed weapons. The fifth man was arrested on the charge of vagrancy. Convictions followed on all of those charges. However, as the victim of the assault and robbery declined to verify a complaint, no warrant was ever issued on that charge.

Defendants concede in their brief that—

"After a person is legally arrested for a crime the search of his person is allowable and the contents found thereon may be used as evidence against him in the trial of the case for the crime for which he is arrested. If the defendants had been lawfully arrested and were legally tried on the charge of robbery; the guns found on their persons at the time of the arrest would have been competent evidence as 'incident' to and as a circumstance connected with the robbery."

That recognizes the principles approved in *Thornton v. State,* 117 Wis. 338, 93 N. W. 1107:

". . . Not only in this country ever since the adoption of the constitution, but in England long before, it has been usual, upon the arrest of the prisoner, to subject him to a search. This is done as well for purpose of safety of custody and incarceration, to ascertain the presence of weapons or implements of escape, as for purposes of discovery. It had become so entirely well established as not an infringement of legitimate personal rights before our constitution was adopted, and has been so universally treated since, that it must be assumed not to have been within the class of unreasonable searches and seizures which the fourth amendment of the constitution of the United States prohibited, in language later adopted into our own constitution. . . ."

To the same effect see *People v. Chaigles,* 237 N. Y. 193, 142 N. E. 583, 32 A. L. R. 676, 679.

However, defendants contend that at the time of the search they were not under lawful arrest, and that, conse-

quently, the search was made in violation of secs. 8 and 11 of art. I, Wis. Const., and art. IV, Amendm. U. S. Const., and was illegal.

As the reported assault and robbery constituted a felony, it was within the authority of Officers McGarvey and Flannery to arrest the defendants on that charge without a warrant, if on the facts which had been communicated to and broadcast by the police department, and the coinciding facts discovered by them upon finding the Hudson automobile with the described license number, and also finding the described man in the group of five men assembled in the booth, they had probable cause to believe or to suspect that the defendants had participated in the commission of that felony. *Mantei v. State,* 210 Wis. 1, 4, 245 N. W. 683; *Gunderson v. Struebing,* 125 Wis. 173, 179, 104 N. W. 149; *Stittgen v. Rundle,* 99 Wis. 78, 74 N. W. 536; *Carroll v. United States,* 267 U. S. 132, 45 Sup. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790, 804; *Stacey v. Emery,* 97 U. S. 642, 645, 24 L. Ed. 1035, 1036. In *Carroll v. United States* the court quoted with approval the rule as stated in *Commonwealth v. Carey,* 12 Cush. (Mass.) 246, 251:

"If a constable or other peace officer arrest a person without a warrant, he is not bound to show in his justification a felony actually committed, to render the arrest lawful; but if he suspects one on his own knowledge of facts, or on facts communicated to him by others, and thereupon he has reasonable ground to believe that the accused has been guilty of felony, the arrest is not unlawful."

In respect to that rule Mr. Chief Justice TAFT said in *Carroll v. United States, supra:*

"The reason for arrest without warrant on a reliable report of a felony was because the public safety and the due apprehension of criminals charged with heinous offenses required that such arrests should be made at once without warrant;"

and also approved the statement in `Stacey v. Emery, supra,` that—

"If the facts and circumstances before the officer are such as to warrant a man of prudence and caution in believing that the offense has been committed, it is sufficient."

As was said in *Bushardt v. United Investment Co.* 121 S. C. 324, 113 S. E. 637, 35 A. L. R. 637, 642, 643:

"The officer in the discharge of his duty must often act upon his own judgment in circumstances of emergency. He should be 'protected if he acts in good faith and on reasonable grounds of suspicion.' 11 R. C. L. p. 801. . . .
" 'Suspicion' implies a belief or opinion as to guilt, based upon facts or circumstances which do not amount to proof. See Century Dict. The test of the sufficiency of the facts and circumstances to justify the arrest is whether they were such as would actuate a man of ordinary reason and prudence in the officer's situation, acting in good faith in the discharge of the officer's duties. 5 C. J. p. 417."

That is in accord with the definition approved in *Eggett v. Allen*, 106 Wis. 633, 638, 82 N. W. 566, and *Schwartz v. Schwartz*, 206 Wis. 420, 425, 240 N. W. 177, viz.:

"Probable cause is such a state of facts in the mind of the prosecutor as would lead a man of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person arrested is guilty." *Bacon v. Towne*, 4 Cush. (Mass.) 217.

In connection with defining probable cause in substantially that form it was held in *Silver v. State*, 110 Tex. Crim. Rep. 512, 8 S. W. (2d) 144, 9 S. W. (2d) 358, 60 A. L. R. 290, 293, that information received by a police officer over the radio as to commission of a crime and the description of the offenders is sufficient probable cause, when coupled with discovery of persons answering the description, to justify a search without warrant of the automobile in which they are traveling.

So in the cases at bar, the information received by Mc-Garvey and Flannery afforded sufficient basis for them, as police officers exercising ordinary prudence and caution, but charged with the duty of apprehending criminals with the dispatch essential for public security in the proper enforcement of the law, to have an honest and strong suspicion that Scaffido and Cicerrello had participated in committing the assault and robbery. Consequently it was not error for the court to hold that the original arrest of those defendants for the assault and robbery was authorized and lawful; that the search made after that arrest was not illegal; and that the evidence procured as the result of that search was admissible, and warranted the conviction of the defendants on the charge of carrying concealed weapons, in violation of sec. 340.69, Stats.

*By the Court.*—Judgments affirmed.