## STATE OF HAWAII *v.* JAMES KALAUKOA POKINI AND HENRY VILLITA.

### No. 4203.

OCTOBER 10, 1961.

TSUKIYAMA, C. J., CASSIDY, WIRTZ, LEWIS, JJ., AND CIRCUIT JUDGE CROCKETT ASSIGNED BY REASON OF VACANCY.

OPINION OF THE COURT BY LEWIS, J.

Defendant-appellants were jointly tried on two indictments presented October 29, 1959, for robbery first degree. The indictment in the one case, Criminal No. 31125, which we will refer to as the first incident or the Fernandez case, was for the robbery of Kalani Fernandez of $300 on September 6, 1959. In the other case, Criminal No. 31126, the indictment was for the robbery of Harry K. Sonoda of $400 on the same day.

The two cases were consolidated for trial by stipula-

tion. On March 30, 1960, upon trial commenced March 28, 1960, the jury returned verdicts of guilty in each case against both defendants. After judgment and sentence, a writ of error was obtained on June 27, 1960.

The specification of errors in defendants' brief alleges error in the charge of the court but fails to comply with the provision of our Rule 3(b)(4) that in such case "the specification shall set out the part referred to *totidem verbis*, whether it be in instructions given or in instructions refused, together with the objections urged at the trial." Likewise, error is alleged in the admission of evidence but there has been no compliance with the provision of the same rule that "the specification shall quote the grounds urged at the trial for the objection and the full substance of the evidence admitted or rejected, and refer to the page number in the transcript where the same may be found." In too large a number of cases the court has encountered the same dereliction on the part of counsel. The significance of the specification of errors seems not to be appreciated. See *Aiau* v. *Aiau*, 39 Haw. 122; *Territory* v. *Meyer*, 37 Haw. 102, *aff'd* 164 F. 2d 845; *Lazarus* v. *Lazarus*, 12 Haw. 369, 374.

The above-cited rule requires that the specification "set out separately the particulars of each error intended to be urged." The provisions we have quoted in the preceding paragraph are specific as to the particulars required when errors are asserted in the charge of the court or the rulings on evidence, but in all instances particulars are required. These should be sufficient to show that the points urged upon this court were raised in the court below and preserved for review. This court should not be left to search the record to satisfy itself that such is the case.

In the statement of the case the questions involved are to be "set forth in the briefest and most general terms,

without names, dates, amounts or particulars of any kind," as the rule provides (Rule 3(b)(3)). The specification of errors will follow, and should abstract the record in such a way as to show that the questions so stated are indeed involved.

The unsatisfactory nature of much of the briefing, and the unnecessary burden placed on the court thereby, make it necessary that we inform the bar we intend to strictly enforce the rule hereafter.

Turning to the contentions presented by defendants, we first will consider the contention that the verdicts are not supported by the evidence. The court refused to direct verdicts for defendants and denied their motion for judgment notwithstanding the verdicts, following which a motion for new trial also was denied. These motions attacked the sufficiency of the evidence and asserted a fatal variance. We find the evidence substantial and clearly sufficient to support the verdicts. The question of variance is taken up at a later point in the opinion.

The evidence showed that at about one o'clock on the morning of September 6, 1959, a Sunday, Kalani Fernandez, the owner of a 1957 Oldsmobile, had with him in his car two boys, Mervyn Hezekia and Kenneth Harada. Fernandez was driving. At the intersection of Kapiolani and Date Streets, Honolulu, Fernandez noted a creamish white Mercury with four occupants, one of whom called out and told him that his cousin, Samuel Leslie, needed help. Fernandez agreed to help and followed the Mercury to the Iolani School grounds on Date Street where the first incident occurred. This is the same matter for which Richard Yoshino was separately tried, convicted, and the conviction affirmed on August 10, 1961 in *State* v. *Yoshino,* 45 Haw. 206.

In this case the attack on the sufficiency of the evidence is centered on the words "by force or putting him

in fear," which appear in the definition of robbery, R.L.H. 1955, § 306-1.

The ground of fear must be adequate (§ 306-5). However, as stated in section 306-6:

"§ 306-6. *Adequate fear defined.* An adequate cause of fear is such as would, under the same circumstances, cause fear in a person of ordinary firmness of like age, sex and state of health, and induce such a person to part with property, to avoid the apprehended injury or danger; or such as the taker of the thing believes, or has reason to believe will cause, and such as does in fact cause, that degree of fear."

The evidence as to the first incident shows that upon arrival at the Iolani School grounds Fernandez got out of his automobile and three persons got out of the Mercury. Two of them were the present defendants. These persons were holding guns. They told Fernandez to hand over the money, and took from his person his wallet containing $300. Hezekia saw Fernandez' hands go up. Whether Fernandez was induced by fear to part with his wallet was a proper subject of inference by the jury from the evidence adduced. See *State* v. *Casto,* 120 Wash. 557, 207 Pac. 952. Clearly, the evidence was sufficient for the jury to so conclude. It was sufficient to show all of the elements of the offense, unless a different result is called for by the question raised as to the ownership of the $300 in Fernandez' wallet. This is considered below.

After taking Fernandez' wallet, defendants made Hezekia and Harada get out of Fernandez' car and into the back seat of the Mercury. They asked the boys "where the money stay." Yoshino, the third man from the Mercury, asked the same question. Finally, Hezekia told them: "Oh, yes, stay up Papakolea * * * Harry Sonoda's house." He knew what they were referring to because

earlier, on Saturday evening, he had been out riding with Harry and Leroy Sonoda,* Norman ............ and Cole ............, and had received from Leroy some information about a burglary which Leroy, Norman and Cole had perpetrated at a place on Date Street a day or two before the robbery.

After Hezekia furnished the information about Papakolea the Mercury proceeded there with Hezekia and Harada still in the back seat. Fernandez was taken away from the Iolani School grounds in his own car, the Oldsmobile, lying on the floor of the car in the back, with defendant Villita driving while Pokini sat in the front and held a gun on Fernandez' head, telling him not to move around. The Oldsmobile followed the Mercury to Papakolea. Fernandez was told they were going to Harry Sonoda's house.

Harry, who was Fernandez' cousin, had been with Fernandez and Hezekia earlier, on Saturday evening, but had returned home. When he heard his cousin's car coming up the hill on which the Sonoda home is situated, he went out to speak to him, and was hit from behind and told to get in the car, the Oldsmobile, which he did. The Mercury also was in the vicinity.

Villita pointed a gun at Harry. Pokini also had a gun. They told Harry to produce the money, and Villita went into the house with Harry, where under threat of the gun, he obtained from Harry $400 that he had, and $1000 that was in a pack under a mattress having been put there by Leroy as Harry had seen at the time.

Again, the evidence was sufficient to show that Harry was induced by fear to part with the money, and to show all other elements of the offense, unless the case is affected

---

*These brothers will be referred to by their first names throughout this opinion.

by the evidence as to the ownership of the money taken, which point is next considered.

Leroy, Norman and Cole had obtained $6000 in the Date Street burglary and had split it three ways, $2000 apiece. The evidence tends to show that not only the $1000 under the mattress, but also the $400 taken from Harry himself upon which the charge is based, were proceeds of the burglary; Norman and Leroy had given Harry money from their shares. The amount given Harry by Leroy is not altogether clear but we will assume the correctness of defendants' contention that the entire $400 was stolen money. Fernandez also had $100 of the stolen money, which he received from Cole.

Defendants assert that there is a fatal variance between the indictments and the proof, in that it was averred in each case that the person robbed was the owner of the money taken, e.g., in Criminal No. 31126 it was charged that defendants:

"* * * did feloniously rob, steal, take and carry away approximately four hundred dollars ($400.00), the exact amount being unknown to the Grand Jury, from the custody and in the presence of Harry K. Sonoda, the owner thereof, * * *."

In the trial court defendants first presented their contention of a fatal variance by a motion to dismiss at the close of the prosecution's case, but this was made only in Criminal No. 31126, the Sonoda case. The motion was denied. Subsequently, this ground was included in the motion made in both cases for a directed verdict, which as above noted was denied.

It was defendants' theory that the defense had brought out that the $300 taken from Fernandez, as well as the $400 taken from Sonoda, was entirely stolen money. As the defense, at most, had raised a doubt on that point in the Fernandez case, that case must depend on the specifica-

tions as to the instructions. Objection was made to the giving of prosecution's No. 11, and to the refusal to give defendants' instructions Nos. 8, 11, and 14.

The refused instructions sought an acquittal in each of the cases if all of the money in the possession of the victim "was not his funds but belonged to someone else." An alternate proposition was submitted in the Fernandez case, seeking an acquittal if "a substantial part of the money" was owned by someone else, but no authority has been presented in support of the proposition that, in the event Fernandez owned part of the money taken, the fact that part of it was stolen would call for the same treatment as if all of it had been stolen. However, in view of our holding in the Sonoda case, in which we have concluded that even if all the money was stolen money that would not call for an acquittal, we deem it unnecessary to pursue this matter.

Prosecution's No. 11, given over objection, charged "that stolen money can be the subject of a robbery." We think that consideration of the variance question must begin with this proposition. The instruction was correct. Just as in the case of larceny, "one who has the right of possession as against the thief is, so far as the latter is concerned, the owner." *People* v. *Edwards,* 72 Cal. App. 102, 236 Pac. 944 (larceny) ; *Ex parte Duel,* 112 Cal. App. 24, 296 Pac. 91 (robbery) ; *State* v. *Bowden,* 62 N.J. Super. 339, 162 A. 2d 911 (robbery) ; *State* v. *Wales,* 168 La. 322, 122 So. 52 (robbery) ; 32 Am. Jur., *Larceny,* § 113; 77 C.J.S., *Robbery,* § 7. This rule applies in a hijacking case. *Ward* v. *The People,* 3 Hill (N.Y.) 395. Illustrative is *Hall* v. *State,* 160 Tex. Crim. 553, 272 S.W. 2d 896. There, juveniles had burglarized a jewelry store and had procured De LaRosa to sell the stolen property. He went to another town to do so, and was surprised in his hotel room, with the proceeds in his possession, by

appellant who had been tipped off by another. Sustaining a conviction of robbery for the taking of this money at the point of a knife, the court said:

"The ninety-three dollars that was taken in the robbery was in the care, control, and possession of De LaRosa and he was therefore the owner thereof within the meaning of that term as used in theft cases. The fact that such sum of money or a large portion thereof had been received by De LaRosa from a sale of some of the stolen property would not alter or change the ownership thereof."

Defendants argue that robbery includes larceny as a constituent element, which is true. Robbery consists of larceny with added elements. 2 Wharton, *Criminal Law & Procedure*, § 547; 46 Am. Jur., *Robbery*, § 3. But defendants are in error in their contention that the larceny case of *Territory* v. *Ferguson*, 23 Haw. 714, is controlling.

In *Ferguson*, defendant's conviction of stealing pineapples, alleged to be the property of Maui Agricultural Company, was reversed on the ground of a fatal variance, in that there was no evidence that the pineapples were the property of said company. It was held that the allegation of ownership was essential and must be proved as laid. The evidence as to ownership was conflicting, but none of it pointed to Maui Agricultural Company in any respect. Thus there was not involved any holding on the point at issue here, and the holding in *Ferguson* is not in conflict with the principle that one who has the right of possession as against the thief is, so far as the latter is concerned, the owner. Indeed, the same authority (25 Cyc.) cited in *Ferguson* at 88 for the principle that ownership must be proved as alleged, states at 89-90 that the actual condition of the legal title is immaterial to the thief, that a possessor may be laid as the owner, and thus "a thief in possession may be described as owner when

the goods have been stolen from him by a second thief."
As stated in *Maxwell* v. *Territory,* 10 Ariz. 1, 85 Pac.
116, 117:

> "\* \* \* It is true that the ownership of stolen property
> must be alleged and proved as alleged; but it would
> utterly defeat the ends of justice if in the trial of
> larceny ultimate title to the property in question must
> be conclusively determined. Such is not the law. One
> who has taken and is in the possession of a stray
> animal has such property interest in it that the taking
> of it from him may be larceny. So also has one in
> possession of stolen property purchased by him from
> the thief; so also, indeed, has the thief himself, in
> possession, as against another than the owner of the
> property."

Argument has been submitted as to the materiality of
an allegation of ownership in the case of robbery. The
general rule is that the charge must negative defendant's
right in the property in some way. 46 Am. Jur., *Robbery,*
§ 34; 77 C.J.S., *Robbery,* § 38; see also 2 Wharton,
*Criminal Law & Procedure,* § 563; Annot., 67 L.R.A. 343.
At common law, as explained in *Hamilton* v. *State,* 133
Fla. 481, 182 So. 854, the approved form was to set forth
the ownership of the property as well as the name of
the person from whom it was taken. *Commonwealth* v.
*Clifford,* 8 Cush. (62 Mass.) 215. In the case before us
this form was used but it meant no more than the same
allegation would have meant in the case of larceny,
namely, that insofar as the robber was concerned the
person named was the owner, having the better right of
possession. As stated in *Commonwealth* v. *Finn,* 108
Mass. 466, a case in which the victim of the robbery had
himself stolen the money:

> "In charging the robbery, the goods stolen were
> properly described as being of the property of the

person from whom they were taken; although, as against the true owner, he had no title or right in the goods, and his possession was tortious."

The court then applied this principle to the case of receiving stolen goods, the defendant in that case having been found not guilty of the robbery itself but only on the count for receiving.

Under some authorities no specific allegation of ownership is necessary, that averment being deemed implicit in the allegation that the taking was from the possession of the victim. Illustrative of this line of authority are *State* v. *Bowden, supra; Clemons* v. *State,* 92 Tenn. 282, 21 S.W. 525; *James* v. *State,* 53 Ariz. 42, 84 P. 2d 1081. This has become the rule in California, following the adoption by statute of simplified procedure. *People* v. *Sampson,* 99 Cal. App. 306, 278 Pac. 492; *People* v. *Johns,* 69 Cal. App. 2d 737, 160 P. 2d 102; *People* v. *Wade,* 71 Cal. App. 2d 646, 658, 163 P. 2d 59, 66. However, under other authorities a specific allegation of ownership is necessary even though the statute defining robbery (see R.L.H. 1955, § 306-1) does not contain the words "the property of another" as in the case of larceny (see R.L.H. 1955, § 293-1). Illustrative of this line of authority are: *Commonwealth* v. *Clifford, supra; Boles* v. *State,* 58 Ark. 35, 22 S.W. 887; and the early California case of *People* v. *Ammerman,* 118 Cal. 23, 50 Pac. 15.

We need not determine the requirements of pleading in this jurisdiction, since the common law form was used in this case. No material variance resulted from the use of this form. *Commonwealth* v. *Finn, supra, People* v. *Anderson,* 80 Cal. 205, 22 Pac. 139; *State* v. *Nelson,* 11 Nev. 334; *People* v. *Ficarrotta,* 385 Ill. 108, 52 N.E. 2d 165. The allegations of the taking from and ownership of Harry Sonoda meant at most that Sonoda was entitled to possession of the money as against defendant who was

not the owner thereof. See *Welch* v. *State*, 195 Ind. 87, 143 N.E. 354.

The contention of fatal variance has not been sustained. In addition to the authorities above cited, see 5 Wharton, *Criminal Law & Procedure*, § 2067; *England* v. *United States*, 174 F. 2d 466; *United States* v. *Daigle*, 149 F. Supp. 409.

We now resume our summary of the evidence, beginning at the point where the two cars parted at Papakolea, for it was when the Oldsmobile was leaving the area that there occurred the search and seizure which is the subject of the next point considered.

Police Officer Donald Lee testified that at about 1:30 A.M. on the Sunday in question he received a call over the police radio, upon receipt of which he headed toward the Papakolea area and noticed the Oldsmobile proceeding toward town. Following it, he succeeded in stopping it. Upon approaching the car he saw Pokini in the driver's seat, Villita next to him, and Fernandez in the left rear. Witness continued:

"I ordered the occupants of the car out and made an initial search of their person—"

Defense counsel then interposed:

"Your Honor, I object to the witness testifying to anything that he may have uncovered as a result of the search. There has been no foundation laid yet."

The court overruled the objection, also the renewed objection to what then ensued, that is, the witness' testimony that at this time other officers arrived on the scene and he then made a search of the car, and under the right front seat found two pistols. The ruling on these objections has not been specified as error. In any event, the burden was on defendants to support the contention of illegal search (*United States* v. *Lipshitz*, 132 F. Supp. 519, 522 (E.D.N.Y.)), not on the prosecution to lay a

foundation for admission of the evidence obtained by the search.

Thereafter, without further objection, witness testified to the make and caliber of the guns and that both were loaded. Moreover, without objection he testified that he found sixteen cartridges in Villita's right front pocket. These articles, including a clip and cartridges found in the guns, having been offered in evidence, defense counsel stated that he had "several objections" and requested "voir dire." No request was made that the jury be excused. As noted later, the ensuing examination was really cross-examination. In the course of this examination the witness testified to the message he had received over the police radio, and that before he began the search he ascertained the names of the occupants of the car and then placed all of them under arrest for burglary.

Following this examination, defense counsel made a motion as follows:

"Your Honor, on that basis I move to exclude all of the testimony of this witness, and object to Prosecutor's Exhibits 3 to 7 for identification from going into evidence on the ground that this evidence was obtained as a result of an illegal search and seizure."

This motion was denied and exception taken, following which the articles were received in evidence over objection and exception.

The specification of error relates only to the introduction of the exhibits into evidence. These were the two guns, the clip and cartridges found therein, and the sixteen loose cartridges taken from Villita's pocket. The specification reads:

"(5). That the said Circuit Court committed material error in permitting State's Exhibits 3 to 7 into evidence on the ground that the evidence so admitted was a result of an illegal search and seizure, contrary

to Defendants constitutional rights."

This is the first case under Article I, Section 5, of the Bill of Rights of the State Constitution. Standing Committee Report No. 20 of the Committee on Bill of Rights of the Constitutional Convention (Proceedings of the Constitutional Convention, Vol. I at 164) states as to this section, then numbered Section 8, that it incorporates the Fourth Amendment of the Federal Constitution; indeed it is in the exact language of the Fourth Amendment. Committee of the Whole Report No. 5 (id. at 301) explains that, being derived from the Fourth Amendment, it "will give to this State the benefit of Federal decisions construing the same." We shall consider it in that light.

It is noteworthy that on the specific question of the admissibility of evidence, debate was had in the Constitutional Convention on June 5, 1950 (id., Vol. II at 28-29) on an amendment which would have added the words: "Evidence obtained in violation of this section shall not be admissible in any court against any person." That amendment was submitted out of fear that this court would apply *Wolf. v. Colorado,* 338 U.S. 25, and would follow states holding against the exclusionary rule of *Weeks v. United States,* 232 U.S. 383 (1914). There was no division among the delegates in their desire to follow the federal decisions but only as to how that was to be accomplished. The problem was resolved by an instruction that the Committee of the Whole Report contain the explanation above noted; the amendment was withdrawn.

This being the situation, it is evident that the ruling by the Supreme Court of the United States on June 19, 1961 (*Mapp v. Ohio,* 367 U.S. 643), closing the door left open in *Wolf* and holding the states to the exclusionary rule of *Weeks,* signifies no change in this State, for we were committed to that course from the date this State was admitted. Previously, of course, our Territorial status

brought us directly under the Fourth Amendment. *Territory* v. *Ho Me,* 26 Haw. 331 (1922).

Turning to *Weeks,* in which the exclusionary rule originated in 1914, we find that the requirement of a seasonable application for suppression of the illegally obtained evidence is part and parcel of the exclusionary rule. Ever since the *Weeks* doctrine was announced that has been an accepted part of it in this jurisdiction. *Territory* v. *Ho Me, supra; Territory* v. *Kataoka,* 28 Haw. 173 (1925); *Territory* v. *Young,* 32 Haw. 628 (1933); *Young and Nozawa* v. *Territory,* 163 F. 2d 490 (9th Cir. 1947), *aff'g* 37 Haw. 189 (1945).

In the case last cited the Court of Appeals for the Ninth Circuit took it to be the rule in the Territory of Hawaii that a motion to suppress the illegally obtained evidence must be made well before the trial. The exact time at which the point must be raised had been reserved by this court in the earlier case of *Territory* v. *Young, supra* at 648, the court at the same time reiterating the rule that the objection must be seasonably made or it is waived.

Under the rule established by the federal cases a motion before trial ordinarily is essential. The rule is sound, and it was not the intention of our constitution to adopt an exclusionary rule even broader in its application than the federal rule. Rule 41(e) of the Hawaii Rules of Criminal Procedure was not applicable at the time of the trial of this case and its construction and application are not before us.

But it is argued that the question of timeliness was not raised at the trial, and that if it had been, counsel for defendants might have raised the search and seizure question on the basis of surprise under the rule of *Gouled* v. *United States,* 255 U.S. 298, or might have urged exercise of the trial court's discretion. Further, it is argued

that a pre-trial motion to suppress was not necessary under the rule of *Agnello* v. *United States,* 269 U.S. 20, and related cases. We commence the discussion with this latter point.

Under the *Agnello* rule the question of illegality of the search and seizure may be raised at the trial on facts which, in the course of trial, are "thrust upon the attention of the court," and which uncontrovertably show the illegal character of the search and seizure. *Amos* v. *United States,* 255 U.S. 313. The reason of course is that what comes out in the course of trial involves no interruption of the trial for a collateral issue. *Agnello* v. *United States, supra.* So the following questions arise: Under the *Agnello* rule could unlawfulness of the search and seizure be shown as it was attempted to be shown here or did that necessarily raise a collateral issue and require a timely motion to suppress or justification for interruption of the trial? Has reversible error been shown?

It is undisputed that a search without warrant after a lawful arrest is not constitutionally interdicted. *Carroll* v. *United States,* 267 U.S. 132, 158; *Territory* v. *Hoo Koon,* 22 Haw. 597; *Charles* v. *United States,* 278 F. 2d 386 (9th Cir.); annotation in 4 L.Ed.2d 1982. Defendants' contention is that the arrest made without warrant before the search was without probable cause, and accordingly was unlawful under the well-settled rule stated in *Carroll* v. *United States, supra* at 156.

Defense counsel elicited from Officer Lee that the message received over the police radio transmitted the information that a Mrs. Ravencraft, of Papakolea, had called stating that Kalani Fernandez and two companions had just left her home, "and they might possibly have been involved in the burglary that occurred two days prior to this incident," evidently referring to the Date

Street burglary which according to Officer Lee's information had occurred on September 4, 1959, or on the Friday preceding the Sunday morning when the car was stopped in the early hours after midnight. While the portion of this testimony set out in quotes above is not altogether clear, it is evident that not only Officer Lee but also other police officers in the vicinity, who shortly afterward arrived on the scene, interpreted it as directing that the Fernandez car be intercepted on suspicion that the occupants were involved in the Date Street burglary.

Obviously, an officer in Lee's situation has no opportunity to check on the reliability of the information he receives over the police radio, and necessarily relies on headquarters. The principle is, as stated in *United States* v. *Romero,* 249 F. 2d 371, 374 (2d Cir.), that among peace officers working together and keeping each other informed the knowledge of each is the knowledge of all. So, in *United States* v. *Bianco,* 189 F. 2d 716 (3d Cir.), an order suppressing testimony was reversed when it appeared that the arresting F.B.I. agent acted entirely on information relayed by another agent that still a third agent "had received reliable information" that accused would arrive by a certain plane having lottery materials with him and was believed to have been previously involved in lottery activities. The record in the case, since it was heard on motion to suppress, promptly made, was a full record and the nature of the third agent's information was developed in the record; the information proved to be reliable.

After the examination of Officer Lee by defense counsel the State did not offer further evidence of probable cause, except to bring out on redirect that Officer Lee had stopped the car on account of the police radio call, and that Mrs. Ravencraft was an adult member of the Sonoda home. However, we decline to dispose of the case on any

theory that all the facts bearing on probable cause were in evidence. The state of the record is attributable to the procedure adopted by the defense. Had the collateral nature of the issue been recognized and a proper motion to suppress made, the prosecution would have had an opportunity to adduce evidence as to the full information which caused the message received by Officer Lee to be sent out over the police radio.

Merely to bring out the message that Officer Lee received over the police radio did not make out a case of unlawful search. See *Scaffido* v. *State*, 215 Wis. 389, 254 N.W. 651; *Silver* v. *State*, 110 Tex. Crim. 512, 8 S.W. 2d 144; *Richardson* v. *State*, 97 Okla. Crim. 370, 264 P. 2d 371. It is evident that Mrs. Ravencraft, an occupant of the Sonoda home, could have conveyed, in her call to the police, information which, with other information in the possession of the police, adequately supported the apprehension of the defendants for the Date Street burglary as accessories. Their actual guilt of course is not the test of probable cause. The evidence elicited by the procedure followed by the defense was by no means conclusive. A timely motion to suppress, or justification for interruption of the trial, was necessary.

A case in point is *Segurola* v. *United States*, 275 U.S. 106. In that case the Chief of Police at Carolina, Puerto Rico, had testified for the prosecution that, having received a confidential telephone message that defendant was driving a Buick automobile with a load of liquor between two specified points, he intercepted the car on the road after an attempt on defendant's part to evade him, arrested defendant, and then found the liquor upon a search of the car. Defendant was not permitted to cross-examine the officer as to the person from whom he received the telephone information. Without passing upon the correctness of this ruling or the question of probable

cause, the court held that the issue of illegal search and seizure was raised too late. It was held, moreover, that there was no prejudice for which a reversal could be ordered when testimony unobjected to and unrefuted clearly showed the illegal transportation, a point upon which we shall have occasion to dwell later.

As indicated by the holding in *Segurola,* defendants are not within the *Agnello* rule on which they necessarily rely. *State* v. *Gunkel,* 188 Wash. 528, 63 P. 2d 376, quite closely parallels this case and so holds. The procedure pursued by defense counsel there was similar to that pursued here. After pointing out that the so-called voir dire was really cross-examination, the court held that the question of probable cause for the arrest could not be pursued by such examination when the direct had not opened up the question and if it was opened up then the State would have rebutting evidence to offer, thus interrupting the trial. This case contains an excellent summary of the exclusionary rule, which we find to be in accordance with the federal rule we are following, and which clearly brings out the difference between the course pursued by the defense here and that required of a defendant who does not rely entirely on the *Agnello* rule. The summary is the same as that set out in *State* v. *Robbins,* 37 Wash. 2d 431, 224 P. 2d 345, a case cited by defendants.

Since the presentation under the *Agnello* rule was insufficient and no other presentation was made, we find no reversible error unless some significance should be given to the circumstance that the ruling of the court below evidently was not based on the reasoning we have set out. Have defendants been prejudiced thereby? We have reached the conclusion that the substantial rights of defendants have not been affected.

Except for the cartridges found in Villita's pocket,

which were cumulative of other evidence, the search and seizure were conducted in a vehicle which defendants were occupying unlawfully, having abducted the owner and converted his car to their own use. Defendants had no standing to attack the search of the vehicle or the seizure of the guns. *Chicco* v. *United States,* 284 Fed. 434, 436 (4th Cir.), *Stakich* v. *United States,* 24 F. 2d 701 (9th Cir.), *Klee* v. *United States,* 53 F. 2d 58 (9th Cir.), *Safarik* v. *United States,* 62 F. 2d 892, 895 (8th Cir.), hereinafter referred to as the trespasser cases; see also *United States* v. *Pete,* 111 F. Supp. 292 (D.D.C.) ; *United States* v. *Friedman,* 166 F. Supp. 786 (D.C.N.J.).

We are dealing now not with the vindication of society against the hijackers, which on consideration of the variance question caused us to rule that it was immaterial that the property taken was stolen property, but with the vindication of the hijackers' rights of privacy under the constitution. Such rights have not been supported by defendants in this case, except as to the cartridges found in Villita's pocket. The contention that we should adopt the California rule, under which a defendant's standing to raise the question of illegal search and seizure is not material (see 55 Mich. L.R. 567), is disposed of by what we have already said as to the intention of our constitution to adopt the federal exclusionary rule but not a still broader rule.

It is asserted, however, that under *Jones* v. *United States,* 362 U.S. 257, defendants had standing to raise the constitutional question without affirmatively showing their interest in the premises searched or the articles seized. *Jones* so holds as to one charged with possession of contraband property. It is contended that the principle of that should be applied here. We are of the view that the trespasser cases above cited are controlling in this case despite *Jones*. That case does not change the

rules as to who are parties aggrieved by an illegal search, or give standing to a trespasser; it simply holds that one indicted for the possession of contraband may launch his attack under the Fourth Amendment without acknowledging his interest in the premises searched or the contraband seized.

It is argued, further, that as owners of the guns defendants had standing without any interest in the vehicle itself, citing *United States* v. *Lester,* 21 F.R.D. 376. That case does not involve a trespasser. Passing the point that defendants did not assert ownership of the guns at the trial and assuming for purposes of present consideration that they did not have to acknowledge ownership of the guns, we consider whether, when the guns were examined and seized, this was (if the arrest previously made was without probable cause) an unconstitutional search and seizure of defendants' effects.

One does not have to maintain his grip on his effects when he has a lawful right to have those effects rest undisturbed in the place where he has put them. On the other hand, a trespasser who places his property where it has no right to be has no right of privacy as to that property. The situation being one in which he has no right of privacy he has no standing. Only the invasion of privacy is protected by the Constitution, as held in *Jones.* See annotations, 96 L.Ed. 66, 4 L.Ed. 2d 1999.

No case to the contrary has been found. In *Jones,* defendant was a guest in the apartment in which the contraband was seized. Defendant in *United States* v. *Lester, supra,* was a corporation officer whose private office was searched. In *United States* v. *Jeffers,* 342 U.S. 48, a case cited in *Lester,* defendant had a right to use the hotel room of his aunts in which the contraband narcotics were seized, though he had not been given permission to store narcotics there. The other cases cited in *Lester* are similar.

The basis of each was the defendant's right to impute to himself the wrong done to the owner or occupant of the premises by the illegal search. A trespasser has no such right and cannot rely on it.

As we have said, the foregoing does not apply to the cartridges found in Villita's pocket. In that instance, the failure to make a timely or indeed any motion to suppress is the decisive point. That Villita was not surprised, and could have made a timely motion to suppress this evidence, is plain. We perceive nothing calling for exercise of a court's discretion to relieve him of the waiver of the constitutional point consequent upon failure to present it seasonably. In any event, as we have said, the evidence as to these cartridges was merely cumulative of other evidence, and the jury could not have failed to reach the same result without it. The intention to use the guns did not have to be shown by the prosecution, the same being presumed under R.L.H. 1955, § 306-9, and there being no evidence to the contrary. It is to be noted that this is not a case in which the evidence in question has supplied unique knowledge within the doctrine of *Silverthorne Lumber Co. v. United States*, 251 U.S. 385. We cannot arrive at the opinion that error was committed which injuriously affected the substantial rights of this defendant, as required by R.L.H. 1955, § 212-14, for a reversal.

Judgment affirmed.

*Ton Seek Pai* for defendants-plaintiffs in error.

*Herbert H. Tanigawa,* Deputy Prosecuting Attorney, City and County of Honolulu (*John H. Peters,* Prosecuting Attorney, with him on the briefs) for the State, defendant in error.